491 F.Supp. 891 (1980)
William E. DOUTHITT and Wanda Kay Douthitt, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 78-157-C(3).
United States District Court, E. D. Missouri, E. D.
March 31, 1980.
Daniel Aubuchon, St. Louis, Mo., for plaintiffs.
Robert D. Kingsland, U. S. Atty., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits following a trial to the Court sitting without a jury. Plaintiffs brought this three-count lawsuit pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. In Counts I and II of the first amended complaint plaintiff William E. Douthitt seeks damages for alleged medical malpractice. In Count III of the first amended complaint plaintiff Wanda Kay Douthitt seeks damages for loss of consortium, services and companionship based on the alleged medical malpractice.
*892 The Court having considered the pleadings, the testimony of the witnesses, the exhibits in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff William E. Douthitt is a resident of St. Louis County, Missouri, born on September 14, 1942. He was honorably discharged from the United States Navy in 1963 and from the United States Navy Reserve in 1965, and is eligible for treatment in a Veterans Administration hospital. Plaintiff William E. Douthitt is the owner of a gasoline service station in St. Louis County. Plaintiff Wanda Kay Douthitt is, and was at all times relevant to this action, the wife of William E. Douthitt.
2. The John Cochran Veterans Administration Hospital is in St. Louis, Missouri, and is operated by the Veterans' Administration Center, an agency of the United States Government.
3. On June 28, 1975 plaintiff William E. Douthitt was involved in an accident while riding his motorcycle. He sustained serious injuries, including right foot and ankle injuries, liver and lung damage, diaphragm and pelvic injuries, and a massive avulsive injury to his left buttock and thigh which resulted in extensive loss of skin, muscle and subcutaneous tissue.
4. Douthitt was taken to St. Louis City Hospital No. 1 (City Hospital), where he was given emergency treatment for his injuries. The course of treatment at City Hospital lasted from the date of the accident, June 28, 1975, until July 7, 1975, when Douthitt was admitted to the John Cochran Veterans Administration Hospital. His treatment at City Hospital included operations to repair his diaphragm, reduction of the compound fracture of the right ankle, and debridement of wounds on the ankle and the left buttock. Because of the extent of the huge buttock injury, a further operation was required and performed at City Hospital on June 30, 1975. This operation included more cleaning and debridement of extensively infected and necrotic tissue. Additionally, the report of this operation entered into Douthitt's records by the operating physician indicates that the "sciatic nerve was preserved and distal pulses were intact at the end of the procedure." Testimony revealed, and this Court finds, that the indication was to the effect that the sciatic nerve was still functional after that operation, and not that they could actually detect its presence in the scarred and necrotic tissue. A third operation at City Hospital was then required during which there was further sharp debridement of the necrotic muscle, fascia and skin and fatty tissue. Douthitt's wound was then dressed but was still of such a severe nature that he was required to go through a number of further operative treatments in order to rebuild that portion of the buttock. For this further treatment he was admitted to the John Cochran Veterans Administration Hospital on July 7, 1975.
5. At this point he came under the care of, inter alia, Ricardo Ramos, M.D. and Timothy O'Connell, M.D. On July 29, 1975 Dr. Ramos performed a split thickness graft to the left posterior thigh and buttock plus a sacral skin flap to Douthitt.
6. Douthitt continued to have problems with the wound in his left thigh and buttock. Specifically, he had trouble sitting for any great length of time and had further problems with ulcerations in the wounds.
7. He subsequently developed, in the posterior aspect of his left knee, an open chronic ulceration in a large hypertrophic scarred area. On February 18, 1976, Robert Wanless, M.D., excised this area in total and covered it with a split-thickness skin graft obtained from the left anterior thigh.
8. On or about February 28, 1976, in order to help cause the blood to circulate, Douthitt underwent another operation which involved a split thickness skin graft to the left posterior aspect of the thigh and buttock. At this point most of his injuries *893 had healed except for the wounds on his upper left thigh and buttock, which were still scarred and ulcerated.
9. On April 26, 1976 Douthitt again underwent an operation for rotation of the skin flap which included the excision of an ischial ulcer, shave of the bone, local flap rotation and split-thickness skin graft. The operation was performed by Dr. Ramos and Dr. O'Connell. During the course of the operation Douthitt's sciatic nerve was transected by Dr. Ramos. The severed nerve was immediately sutured, however, the attempted repair was not successful. Douthitt reported that he had lost the feeling in his left foot upon recovery from the operation.
10. As a result of the original trauma and resulting corrective operations, Douthitt's sciatic nerve had become encased in scarred and necrotic tissue and was impossible to detect. The nerve is usually found somewhere between 1½ inches and 5 inches below the surface. By the time of the April 26, 1976 operation, Douthitt had lost approximately two inches of skin, muscle and tissue from his left buttock area.
11. Dr. Ramos had not consulted Douthitt's City Hospital records, and had not considered the possibility of involvement of the sciatic nerve in Douthitt's April 26, 1976 operation.
12. Although Douthitt signed a surgery consent form prior to his operation of April 26, 1976, he was never advised or informed of the possibility or risk of injury to his sciatic nerve before that operation.
13. The actual severing of the nerve was impossible to avoid because of the damaged condition of the traumatized area in Douthitt's left buttock. Dr. Ramos should have been aware of the possibility of involvement with the sciatic nerve, however, and should have communicated this risk to Douthitt. Then, even though the surgery was corrective in nature rather than cosmetic, Douthitt could have sought further medical opinion and advice and, indeed, perhaps another physician. As such, however, he was not given a full disclosure of the risks involved in the surgery.
14. While the Court cannot find that Dr. Ramos breached a duty of care to Douthitt in the actual cutting of the sciatic nerve under the conditions involved as reflected in the record, we do find that he clearly breached his duty to inform Douthitt of the risks involved in the surgical procedure employed. The record, particularly in plaintiffs' testimony of experts, reflects, and this Court finds, that the failure to warn of sciatic nerve involvement in an operation of this kind was negligent. His failure to warn of the possibility of injury constitutes conduct below the standard of care required of physicians. Additionally, the Court finds that, while the traumatized condition of the flesh may well have rendered it impossible to distinguish the nerve or locate it with electric stimulus, the condition of the wound was a factor Dr. Ramos should have taken into account in warning Douthitt of the risk of injury to the sciatic nerve. Furthermore, had Dr. Ramos read the City Hospital records of Douthitt's treatment, he should have been made aware of at least the possibility of involvement of the sciatic nerve.
15. As a result of the transection, Douthitt's left leg suffered paralysis, numbness and atrophy below the knee. He is left with a "drop-foot" condition.
16. Douthitt's sciatic nerve injury and resulting drop-foot condition are permanent. Douthitt was 34 years old at the time of the sciatic nerve injury and it is estimated that his remaining life span was, at that time, approximately 35 years.
17. Douthitt is the owner of a gasoline service station. He is still able to work, and in fact is working full time at his business, despite the nerve injury. He is able to ambulate well with the aid of a foot brace. And although the evidence shows some time away from his business because of his hospitalization and rehabilitation due to the nerve damage, the evidence of lost income in this regard is both speculative and minimal. Additionally, the evidence shows that Douthitt's business began paying income to his wife at about the same rate it formerly *894 paid him, although he was able to work and did so on a full time basis, and the nature of his work had not changed substantially since before the original injury. The Court finds, therefore, that Douthitt's damages fall substantially in the area of his permanent nerve injury and drop-foot condition and pain and suffering. The Court finds further that much of Douthitt's work-related discomfort was the result of the original accident which, of course, is not compensable in this action.
18. Plaintiff William E. Douthitt and Wanda Kay Douthitt were married to each other on May 15, 1964 through the present; and as such, Wanda Kay Douthitt was and is entitled to the consortium, services, society and comfort of her husband.
19. The Court finds that Wanda Kay Douthitt's loss of consortium of her husband in regard to the conjugal aspects of this marriage was due to his original injuries and not to the severing of the sciatic nerve.
20. The Court finds that Wanda Kay Douthitt has suffered the loss of certain services, society and comfort of her husband on account of the negligence of defendant's agents. He cannot engage in certain recreational and social activities, nor can he be of the same assistance to her in their home that he was before the operation of April 26, 1976.
21. The Court finds that, because of the negligence of defendant in failure to warn Douthitt of the risk to his sciatic nerve prior to the operation of April 26, 1976, he has been damaged in the amount of $85,000.00.
22. The Court finds Wanda Kay Douthitt's damages for loss of services, society and comfort of her husband to be $7,500.00.

CONCLUSIONS OF LAW
This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1346(b) and the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. Plaintiffs have complied with all of the jurisdictional requirements of § 2671 et seq.
The doctors involved in the treatment of plaintiff William Douthitt at the John Cochran Veterans Administration Hospital were all agents and employees of the United States of America, which is the proper defendant in this action.
The liability of the United States in this action is to be determined in accordance with the law of Missouri. 28 U.S.C. § 1346(b); Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Brown v. United States, 419 F.2d 337 (8th Cir. 1969).
The Missouri standard in malpractice actions requires a doctor to
use and exercise that degree of care, skill and proficiency which is commonly exercised by the ordinarily skillful, careful and prudent physician and surgeon engaged in similar practice under the same or similar conditions. It is not sufficient that he may have possessed the requisite training and skill; he must also have used and applied it in the treatment of the plaintiff. Steele v. Woods, 327 S.W.2d 187, 196 (Mo.1959).
See also, Brown v. United States, supra; Doss v. United States, 476 F.Supp. 630 (E.D. Mo.1979).
The duty to use ordinary skill includes the duty to warn of risks of surgery in a manner sufficient to allow the patient to give an informed consent to the treatment. If a doctor fails to either act in accordance with the proper standard of care and treatment, or to sufficiently inform the patient of risks involved in that treatment so that the patient may accept or reject the treatment from that physician, he is negligent and therefore liable for resulting damage. Aiken v. Clary, 396 S.W.2d 668, 673 (Mo.1965).
The Court concludes that the failure to inform Douthitt of the risk of harm to his sciatic nerve prior to the April 26, 1976 operation was conduct below the standard exercised by the reasonably prudent physician under similar conditions, and was therefore negligent.
*895 The Court concludes that the actual transection of the sciatic nerve was not, under the conditions, negligent.
The Court concludes further that Wanda Kay Douthitt has incurred damages due to the negligence in this action. As noted in the findings of fact, any change in the conjugal nature of her relationship with her husband is the result of the injuries suffered in the 1975 accident and not in the severance of the sciatic nerve. But her right of action under Missouri law involves more than the actual loss of consortium in regard to the conjugal aspects of the marital relationship; she is entitled to damages for loss of the services and assistance of her husband when the loss is the result of negligent treatment of him. See Morrison v. Ted Wilkerson, Inc., 343 F.Supp. 1319, 1327 n.3 (W.D.Mo.1971) (construing Missouri law in a diversity case); Manley v. Horton, 414 S.W.2d 254, 261 (Mo.1967). The Court concludes that plaintiff Wanda Kay Douthitt has suffered the partial loss of services and assistance of her husband as noted in the findings of fact, and finds that she is entitled to recovery.
There is no exact measure or table of damages for pain and suffering in Missouri. See Graeff v. Baptist Temple of Springfield, 576 S.W.2d 291 (Mo.1978). The finder of fact has broad discretion in fixing the damages within reason. The factors this Court considers are that Douthitt's injury is severe in that he has lost the use of his left foot, that there is pain and numbness that will continue, and that the injury is in fact permanent, and that he has an estimated life span of approximately 35 years from the time of the negligent act. See, Graeff v. Baptist Temple of Springfield, supra at p. 309; Ricketts v. Kansas City Stock Yards of Maine, 537 S.W.2d 613 (Mo.App.1976). Accordingly, he will be awarded damages in the amount of $85,000.00.
Judgment will be entered for plaintiff William E. Douthitt on Count I of plaintiffs' first amended complaint in the amount of $85,000.00.
Judgment will be entered for defendant on Count II of plaintiffs' first amended complaint.
Judgment will be entered for plaintiff Wanda Kay Douthitt on Count III of plaintiffs' complaint in the amount of $7,500.00.