548 F.Supp. 97 (1982)
Gary L. ROLL and Julie Beth Roll, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. S80-0109C.
United States District Court, E. D. Missouri, Southeastern Division.
September 24, 1982.
*98 Walter S. Drusch, Jr., Drusch & Dillard, Cape Girardeau, Mo., for plaintiffs.
Thomas E. Dittmeier, U. S. Atty., by Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiffs Gary L. Roll and Julie Beth Roll brought this cause of action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. Plaintiffs instituted this suit against the United States of America after undergoing a surgical procedure called a bilateral mental neurectomy at the John Cochran Veterans Hospital in St. Louis, Missouri, on October 27, 1977. Plaintiffs allege that they are entitled to damages because the doctor who performed the operation negligently failed to advise Mr. Roll of the possibility of any increased pain he might suffer as a result of the surgical procedure.
This case was tried to the court sitting without a jury. The court having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiffs are residents of the City and County of Cape Girardeau, Missouri. They instituted their action in this court pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. after filing a claim with the Veterans Administration on October 24, 1979, as required by 28 U.S.C. § 2675. The agency denied their claim on April 21, 1980.
2. Defendant, through its employees and the Veterans Administration operates John Cochran Veterans Administration Hospital in St. Louis, Missouri. Plaintiff Gary Roll underwent the surgical procedure which he alleges caused him increased pain at this hospital.
3. In 1974, when the plaintiff Gary Roll was serving as a member of the Armed Forces, he had several teeth extracted. The extractions resulted in damage to the nerves of his jaw which has caused him a great deal of pain subsequently. As a result of these extractions, Gary Roll presently receives 50% service connected disability. Mr. Roll received an honorable discharge from the service on September 7, 1974.
4. By December of 1976 the intensity of pain that the plaintiff Gary Roll was experiencing from these extractions of his teeth, had reached such intensity that he was unable to maintain a normal social life. As a result, Mr. Roll visited a neurologist who referred him to an oral surgeon. The plaintiff's medical records from the Veterans Administration Hospital, introduced as evidence at trial, state that he was complaining of "pain, burning and numbing sensations of lower lip from R[ight] to L[eft]" and that this pain had commenced to increase in intensity 3 to 4 months prior to this visit in April of 1977. Therefore prior to his first operation the pain was limited to the area around the plaintiff's lower lip.
5. On June 23, 1977 Gary Roll was admitted to the John Cochran Veterans Hospital in St. Louis, Missouri. The next day, after signing a consent form, Mr. Roll underwent the surgical procedure called a right mental neurectomy. The purpose of the operation was to remove the right mental nerve, which is the branch of the nerve that supplies feeling to the entire face. The procedure was supposed to result in the permanent anesthesia of Mr. Roll's right lip and chin. Another purpose of this procedure is to determine the cause of pain by exposing the mental nerves to visual observation and to discover the possible existence of any potentially malignant growths. Therefore, after Mr. Roll's operation a portion *99 of the mental nerve was sent for a biopsy report by Dr. Gustave, the operating physician, and Dr. Sutley, the assisting physician.
6. After receiving results of the laboratory report, the doctors concluded that Mr. Roll's pain had been caused by a traumatic neuroma. A neuroma is an attempt on the part of a nerve to regenerate through scar tissue. The mental neurectomy is a recognized procedure to alleviate pain caused by neuroma.
7. On June 28, 1977 the plaintiff Gary Roll was discharged. The Veterans Administration Hospital records indicate that at that time he was satisfied with the results.
8. On August 5, 1977 Gary Roll again was admitted to the Veterans Administration Hospital for the pain he was experiencing. At that time, the plaintiff was taking decadron, delmane, and demerol to alleviate his suffering. The hospital records, on August 8, 1977, show that Mr. Roll complained that the "pain radiates up and around [his] ear" causing a "sharp and burning" sensation. In light of these records, this court finds that the plaintiff experienced an increase in areas in which he felt pain as early as August of 1977. At trial, the plaintiff testified that he presently is experiencing chronic pain in his chin, lip, high neck, jaw, gums and anterior part of his lower jaw. Prior to the first operation on June 28, 1977 the medical records indicate that the plaintiff's pain had been limited to the lower lip area. Neurological consultation indicated that the new pain might be associated with the earlier neurectomy. On August 10, 1977 Mr. Roll left the hospital.
9. From August of 1977 through October of 1977, Dr. Pernoud, Mr. Roll's treating physician, prescribed various drugs and pain medication in an effort to treat the plaintiff's condition conservatively. In addition, the doctor gave Mr. Roll steroid injections in an attempt to alleviate the plaintiff's pain. On October 25, 1977 Mr. Roll was again admitted to the Veterans Administration Hospital. His admission note indicated that in the previous 2 weeks the plaintiff had complained of increasing pain in the right and left jaw.
10. Dr. Pernoud testified that he recommended a bilateral mental neurectomy as a measure of last resort. The operation consisted of removing the nerves in the jaw hopefully resulting in a completely numb lower lip. The doctor explained that he was aware of the presence of a tumor growing on Mr. Roll's mental nerves and as a result felt the operation was necessary. In addition the doctor testified that his patient complained of severe pain around his jaw and ear. Therefore, the purpose of the operation was to remove the tumor, send the removed tissue for a biopsy, in addition to alleviating the plaintiff's pain.
11. On October 26, 1977, after discussing the procedure with Dr. Pernoud, Mr. Roll signed a consent form authorizing a bilateral mental neurectomy. The doctor testified he told his patient that the removal of the tumor should result in numbness of his lower lip. In addition, Dr. Pernoud indicated that a further complication of the surgery might include infection, bleeding, pain and swelling. The doctor further testified that he told Mr. Roll that he might have further pain as a result of the regrowth of the tumor. It is clear from the testimony at trial that Dr. Pernoud did not tell the plaintiff that he would not have any pain in the future.
12. Dr. John L. Sheets, who is at present an oral surgeon residing in Champaign, Missouri testified that he believed that a doctor would not be exercising ordinary care if he failed to warn a patient that one of the possibilities of a mental neurectomy is the enhancement of pain. Dr. Robert L. Ward who is an oral surgeon residing in Cape Girardeau and is the plaintiff's treating physician testified that he would inform a patient of the possibility of greater pain resulting from this procedure. Dr. Ward failed to state explicitly that the failure of a doctor to warn of increased pain would be a violation of a doctor's duty of care.
13. Mr. and Mrs. Roll testified that the pain Gary Roll is feeling presently has had a substantial impact on their lives. Mr. Roll is prevented from performing work *100 that he might otherwise perform and the couple has a limited social life as a result of the pain that Gary Roll experiences.
14. From all the evidence adduced at trial, and in light of the circumstances which led the plaintiff to agree to surgery on October 26, 1977, it is the conclusion of this court that the plaintiff would have gone ahead with the operative procedure even if he had been warned of the possibility of increased pain. This conclusion would have been reached even if the plaintiff had made the self serving statement that he would have withheld consent if the doctor had warned him explicitly of increased pain.

CONCLUSIONS OF LAW
This court has jurisdiction of this case pursuant to 28 U.S.C. § 1346(b). Plaintiffs claim that they are entitled to damages for the increased pain and injuries Mr. Roll has sustained as a result of the surgery he underwent at the John Cochran Veterans Hospital in St. Louis. Therefore the question of law presented by this case is whether the plaintiffs have maintained by a preponderance of the evidence that they sustained damages as a result of Dr. Pernoud's failure to inform Mr. Roll that there was a possibility of increased pain, and whether this failure to inform was in fact negligent.
On October 24, 1979 the plaintiffs filed a claim with the Veterans Administration alleging that Mr. Roll was experiencing increased pain as a result of his operation at the Veterans Administration Hospital on October 27, 1977. The agency rejected the plaintiffs' claim that they were entitled to damages because the doctor who performed the procedure failed to advise Mr. Roll of the possibility of increased pain; subsequently plaintiffs filed their suit in this court pursuant to 28 U.S.C. § 2675(a). See findings of fact No. 1.
28 U.S.C. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues ..." In medical malpractice cases, the Supreme Court has held that a "claim `accrues' within the meaning of the act when the plaintiff knows both the existence and the cause of his injury." United States v. Kubrick, 444 U.S. 111, 113, 100 S.Ct. 352, 355, 62 L.Ed.2d 259 (1979). The court further reasoned that it could not hold that "Congress intended that `accrual' of a claim must await awareness of the plaintiff that his injury was negligently inflicted." Id. at 123, 100 S.Ct. at 360.
In accordance with the principles enumerated by the Supreme Court, it is clear that the plaintiffs' cause of action against the defendant for the June, 1977 procedure at John Cochran Veterans Hospital accrued on August 5, 1977. On that date the hospital records indicated that Mr. Roll was admitted because of the increased pain he was feeling after his first mental neurectomy. On August 8, 1977 the records of the hospital further indicate that the "pain may be associated with neurectomy on 6-22-77." Therefore, as of August, 1977 plaintiffs were aware both of the cause and existence of Mr. Rolls' injury. However, the plaintiffs failed to file a claim with the Veterans Administration until October 24, 1979 which is more than 2 years after the accrual of plaintiffs' claim. Therefore it is the conclusion of this court that plaintiffs are barred from recovering for damages for the operation that occurred on June 22, 1977.[1]
*101 The liability of the United States in an action brought pursuant to the Federal Tort Claims Act is to be determined in accordance with the law of Missouri. 28 U.S.C. § 1346(b); Douthitt v. United States, 491 F.Supp. 891 (E.D.Mo.1980). Under Missouri law a doctor is under a legal duty to exercise the degree of skill or care that an "ordinary skillful, careful and prudent physician" would exercise when determining the risks that must be disclosed to a particular patient facing a certain medical procedure. Aiken v. Clary, 396 S.W.2d 668 (Mo. 1965). However, as in any other negligence action, the plaintiff must establish the existence of a legal duty, a breach of that duty, damages resulting from the breach, and finally a causal connection between the failure to inform and the injury suffered by the plaintiff. See Aiken v. Clary, 396 S.W.2d at 679. Although this court believes that Mr. Roll should have been warned of the possibility that the operation could result in increased pain, see finding of fact No. 12, plaintiffs have failed to establish by a preponderance of the evidence that his increased pain was a result of his second operation on October 27, 1977, see findings of fact Nos. 4, 8, 9, or that the disclosure by Dr. Pernoud of the possibility of increased pain would have resulted in a decision against proceeding with the second operation. Therefore, the plaintiffs have failed to prove by a preponderance of the evidence two of the essential elements of a negligence case.
Accordingly, judgment will be entered for the defendant.
NOTES
[1] This court cannot accept the plaintiffs' argument that they are entitled to recover damages resulting from the June, 1977 operation under a theory of "continued treatment." In Thatcher v. De Tar, the Missouri Supreme Court held that the "statute [of limitations] does not commence running until treatment by the physician or surgeon has terminated, where the treatment is continuing and of such nature as to charge the medical man with continuing care and treatment." 351 Mo. 603, 173 S.W.2d 760, 762 (1943). This rule was reaffirmed in Shaw v. Clough, 597 S.W.2d 212 (Mo.App.1980) where the court reasoned that this theory was applicable because the pleader viewed the entire history, care, treatment, and surgery as a whole. The facts of Thatcher v. De Tar, supra, and Shaw v. Clough, are clearly distinguishable from the facts presented by plaintiffs' lawsuit. Plaintiffs are charging the defendant with the negligent failure to inform about the consequences of a particular surgical procedure. There is no allegation that either the surgery or the post operative procedures were negligently performed. Nor is there an allegation that defendant failed to warn Mr. Roll about the consequences of any post operative procedure. Therefore the entire history, treatment and surgery are not being treated as a whole. Plaintiffs have limited their complaint to a theory of informed consent with regard to a specific operation.