**Nita R. BALTZELL, Appellant,**

v.

**William C. VAN BUSKIRK,
M.D., Respondent.**

**No. WD39704.**

Missouri Court of Appeals,
Western District.

May 10, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Application to Transfer Denied
July 26, 1988.

Elwyn L. Cady, Jr., Independence, for appellant.

Allan V. Hallquist, Blackwell, Sanders, Metheny, Weary and Lombardi, Kansas City, for respondent.

Before NUGENT, P.J., and CLARK and KENNEDY, JJ.

CLARK, Judge.

This appeal is from an adverse judgment entered on a jury verdict for respondent doctor in a second trial of appellant's suit for damages. In the first trial, which also included as defendants the Baptist Medical Center and Dr. Capps, the court directed a verdict for all defendants. On appeal,[1] this court remanded for a new trial against respondent only, holding that plaintiff's evidence was sufficient to withstand a motion

1. *Baltzell v. Baptist Medical Center*, 718 S.W.2d 140 (Mo.App.1986).

for directed verdict. The judgment for respondent is affirmed.

Certain facts in the case were not in contest. Appellant had been treated by respondent from time to time over a period of years for various conditions. Appellant had a heightened awareness of the risk of undetected cancer because her mother had died of the malady and respondent had previously removed a tumor from appellant's right breast. When appellant noticed a lump in her left breast in 1981, she immediately consulted respondent. Upon examination, respondent recommended a diagnostic biopsy and with appellant's consent, he arranged for her admission to Baptist Hospital the following week.

On November 16, 1981, respondent surgically removed the suspect tissue and analysis determined the growth to be benign. The incision was sutured and appellant was discharged from the hospital the next day. Some three weeks later, however, respondent was called upon to render additional treatment to appellant for an infection which had developed at the site of the incision. That treatment was successful and appellant suffered no other ill effects. The only permanent consequence of the diagnostic surgery is a scar at the site of the incision.

Appellant brought this suit for damages and alleged that she suffered pain, mental anguish and disfigurement as a result of respondent's treatment. She advanced several theories for recovery which may generally be described as surgical battery and medical malpractice. All turn on the question of whether appellant's admitted consent to the surgery operates to defeat a claim in which there is no complaint of deficiency in the surgery performed. Appellant resorts to the battery theory by merely ignoring the fact of her consent. If the consent be a factor, however, she contends it was not an informed consent because respondent did not disclose to her the possibility of an infection and he did not describe the possible diagnostic alternative of a mammogram.

Appellant offered no expert medical evidence showing a departure by respondent from a recognized standard of medical care in the performance of the surgery or in the disclosures made to appellant at the time her consent to the surgery was given. Instead, appellant contended that her disavowal of the consent was sufficient, if believed by the jury, to entitle her to recover under the theory of battery. In accordance with this theory, appellant offered the following verdict directing instruction:

### Instruction A

Your verdict must be for Nita Baltzell if you believe:

First, Dr. Van Buskirk intentionally cut into her breast tissue with a scalpel, and

Second, Dr. Van Buskirk caused Nita Baltzell bodily harm,

unless you believe that Nita Baltzell is not entitled to recover by reason of Instruction No. _____.

This instruction, based on MAI 23.02 was refused by the trial court. The failure to give this instruction is appellant's first claim of trial error.

As we comprehend appellant's contention, she argues that the effect of her consent to the surgery and the relevance of consent to the claim of an offensive invasion of appellant's person is to be determined by her own retrospective appraisal. In the absence of what she considers to have been the minimum necessary disclosures, she deems herself entitled to disavow the consent and thereby convert respondent's treatment into an intentional tort of battery. The instruction quoted above therefore ignored the fact of appellant's consent to the surgery and submitted no issue to the jury on the effect of the consent or any standard by which the jury was to measure respondent's conduct. Under Instruction A, appellant makes a submissible case merely by proof that respondent performed the surgery and in conse-

quence, appellant suffered damages.[2]

A battery is an intentional tort which, by definition, is not a cause of action for negligence. A claim in battery or trespass may lie by reason of treatment furnished by a physician where an operation is performed without the patient's consent or where the operation is not the surgical procedure to which the patient gave his consent. *Hershley v. Brown*, 655 S.W.2d 671, 678 (Mo.App.1983). By contrast, where the consent to the treatment was given but with insufficient or incomplete disclosure of risks, the cause of action is in medical malpractice based on negligence of the physician to meet a recognized standard of care. *Zahorsky v. Griffin, Dysart, Taylor, Penner and Lay, P.C.*, 690 S.W.2d 144, 154 (Mo.App.1985), citing *Douthitt v. United States*, 491 F.Supp. 891 (E.D.Mo. 1980).

The general rule is that an action involving lack of informed consent to medical treatment is not within the traditional concept of battery which is reserved for cases where the physician ignores the patient's request for an explanation or where a patient consents to one type of treatment but the physician performs a substantially different treatment. *See Berroyer v. Hertz*, 672 F.2d 334, 342 (3d Cir.1982); *Pauscher v. Iowa Methodist Medical Center*, 408 N.W.2d 355, 361 (Iowa 1987). Lack of informed consent is a proper element of a medical malpractice case. It should not be used to elevate the cause of action to one for intentional tort. *Twitchell v. MacKay*, 78 A.D.2d 125, 128, 434 N.Y.S.2d 516, 519 (1980). Where a medical procedure is completely unauthorized, it constitutes a battery, but if the patient claims a failure to disclose the risks, the cause of action is bottomed on negligence. *Nelson v. Patrick*, 58 N.C.App. 546, 550, 293 S.E.2d 829, 832 (1982).

It has been suggested in some reported decisions that no cause of action in battery can be stated in an informed consent case because, absent proof of conscious and intentional wrongdoing by the doctor, deliberate misconduct is not inferred from less than full disclosure. Instead, the inference is that the physician intends in good faith to confer a benefit on the patient, although he may have acted negligently. *Dries v. Gregor*, 72 A.D.2d 231, 235, 424 N.Y.S.2d 561, 564 (1980). The intentional tort of battery is therefore not conformable in theory with allegations that the doctor furnished less than complete information about a recommended course of treatment.

In the present case, appellant did not allege that the consent to surgery which she gave was exceeded or that any treatment was performed other than that to which she had consented. The claim was only that respondent should have given her more information to the end that her consent to the treatment would have been with full appreciation of the risks and alternatives. That claim is one based on negligence of respondent in failing to provide a complete disclosure. It was not a cause of action for battery and proffered Instruction A was correctly refused.

Appellant suggests that the prior opinion by this court, *Baltzell v. Baptist Medical Center, supra*, established the law of the case when it described appellant's claim as one for surgical battery, and that her Instruction A was a proper submission under that theory. Although the opinion did use the term surgical battery, it also stated that appellant's cause of action depended on proof of the standard of professional care by which respondent's disclosures to appellant were to be judged. The cases cited in the opinion required the claimant in an informed consent case to prove by expert testimony that the physician was negligent in failing to give the patient information which a reasonably competent medical practitioner would have disclosed under the same or similar circumstances. The evi-

---

2. Appellant does not suggest whether the conditions of an affirmative defense or a converse would have been the subject of a defense instruction presenting the issue of the consent. It is unnecessary for purposes of this opinion to speculate on this aspect of the instructions.

dence appellant presented does not support a submission under a theory of intentional tort, by whatever label is attached. If appellant's claim is actionable at all, it is only under a theory of medical malpractice. Appellant's first point is denied.

■ As an alternative to the theory of intentional tort, appellant offered her proposed Instructions B and C which submitted the claim under a theory of negligence. These instructions were refused and in her second point, appellant contends that was error.

Plaintiff's verdict directing instruction as given by the court reads as follows:

Your verdict must be for plaintiff if you believe:

First, that before defendant performed the surgery on the plaintiff, defendant failed to inform plaintiff about the risk of surgical wound infection, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence, plaintiff sustained damage.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession.

Appellant had offered instead her Instructions B and C which were refused and which submitted appellant's theory of negligence in the following terms:

### Instruction B

Your verdict must be for Nita Baltzell if you believe:

First, Dr. Van Buskirk failed to secure an informed consent from her for surgery, and

Second, Dr. Van Buskirk was thereby negligent, and

Third, as a direct result of such negligence Nita Baltzell sustained damage.

### Instruction C

The term "informed consent" as used in these instructions means the willing and uncoerced acceptance of a medical intervention by a patient after adequate disclosure by the physician of the nature of the intervention, its risks and benefits, as well as of alternatives with their risks and benefits.

Instructions B and C were properly refused by the court. Although these instructions did correct the error of Instruction A in that a submission of negligence was included, they erred in that the act or omission of respondent contended to have constituted negligence was not stated and there was no definition of the standard of care by which "adequate disclosure" was to be judged by the jury.

*Aiken v. Clary,* 396 S.W.2d 668 (Mo. 1965), involved a claim that the defendant physician had failed to advise his patient sufficiently concerning the hazards of insulin shock therapy. The court held that in such cases, the negligence of the physician is measured by determining whether the doctor has adhered to a standard of reasonable medical care as such standard is established through expert medical evidence of what a reasonable medical practitioner would have done under the same or similar circumstances. *Id.* at 675. *Aiken* also suggests that in terms of theory and submission there is essentially no difference between a medical malpractice case based on improper care and treatment and a case based on the failure of the doctor to inform the patient sufficiently when a consent to treatment is obtained.

■ The instructions which the court gave in this case are patterned after MAI 21.01 and MAI 11.06, the latter being the instruction defining negligence. Appellant makes no claim that the instruction as given deviated from the MAI form. MAI 21.-01 and its companion, MAI 11.06, are designated as the instructions to be used in medical malpractice cases. Their use is mandatory in any case to which the MAI instructions apply. A failure to use such instructions is presumed to be error. *Callicoat v. Acuff Homes, Inc.,* 723 S.W.2d 565, 571 (Mo.App.1987). If, as we conclude

from the holding in *Aiken*, a case of medical negligence based on failure of the physician to make full disclosure to the patient before obtaining consent to treatment is included in the general class of medical malpractice actions, then the appropriate instruction to be used is MAI 21.01. It also follows, of necessity, that it cannot be error for the trial court to give the MAI pattern instruction, as was done in this case, and to refuse a tendered instruction not conforming to the MAI pattern.

■ We are aware of *Kinser v. Elkadi*, 674 S.W.2d 226 (Mo.App.1984), in which the southern district of this court approved an instruction defining the phrase "informed consent." [3] The instruction was not taken from MAI. After citing *Aiken v. Clary*, *supra*, and describing the *Aiken* standard for defining negligence in accordance with MAI 11.06, the *Kinser* court approved the not-in-MAI definition of informed consent by stating, "there being no applicable MAI instruction, we hold the trial court did not err in giving Instruction 7." *Kinser*, 674 S.W.2d at 232.

We disagree with this conclusion. There is no MAI instruction to define informed consent because the term has no place in jury instructions in a case of medical negligence based on failure of the physician to inform the patient fully as to risks and benefits of proposed treatment. Under *Aiken*, the theory of negligence is the same in a medical malpractice case whether the claim be for improper treatment or for inadequate disclosure preliminary to obtaining the patient's consent to treatment. The standard of care by which the physician's conduct is to be measured by the jury is defined in MAI 11.06, and that instruction guides the jury in deciding whether or not the physician has been negligent.

There is no basis to depart from MAI 21.01 in a case where consent to treatment is the issue. As the present case demonstrates, the MAI form instructions adequately present the law to the jury without use of the term "informed consent" and an appended definition. The alternative approved in *Kinser* as a form of instruction in such cases is not a viable option because it represents a departure from the Notes on Use mandating that MAI instructions be employed in cases where they are applicable. We decline to follow *Kinser* on this account.

■ Appellant also complains that the verdict director given by the court was deficient because it posed only the failure by respondent to disclose the risk of infection from the surgery. She contends the instruction should also have hypothesized the failure by respondent to disclose other possible diagnostic alternatives.

■ The cases have consistently held, commencing with *Aiken v. Clary, supra*, in the area of consent to medical treatment, that no cause of action for malpractice is submissible unless the claimant presents expert testimony to show what disclosures a reasonable medical practitioner would make under the same or similar circumstances. Such was the rule followed in *Kinser v. Elkadi, supra*, even where use of the term "informed consent" in the jury instruction was allowed. In the present case, appellant offered no expert testimony to this effect, either as to disclosure of the risk of infection or possible alternatives to surgery.[4] Appellant therefore has no ground to complain that the submission under MAI 21.01 did not include a failure by respondent to discuss the use of a mam-

3. Although the court did not reach the asserted errors in the verdict directing instructions which used the phrase "defendant failed to secure an informed consent," because it found the errors not preserved, the holding implicitly approved the verdict directing instructions by sanctioning use of the term "informed consent."

4. Respondent argues in a final point that appellant made no submissible case of negligence either as to disclosure of infection risk or alternative means for diagnosis because no expert testimony meeting the requirement of *Aiken* was offered. We agree, but under *Grippe v. Momtazee*, 696 S.W.2d 797 (Mo. banc 1985), we must first address each of appellant's claims of error, and if all are rejected, the issue of submissibility is not reached.

mogram as an alternative to the surgical biopsy.

◼ In her fourth point, appellant argues that the trial court erred when it overruled an objection by appellant's counsel to a hypothetical question asked of respondent's expert medical witness. As presented, the question assumed the date on which appellant discovered the tumor in her breast, the history of cancer in the family and the recommendation by respondent that diagnosis of malignancy be accomplished by surgical removal of the tumor. The question was whether under those conditions the standard of care for a surgeon required that the patient be informed of the risk of infection. Appellant objected that the question excluded relevant facts, a history of fibrocystic disease, the availability of mammography and the status of the "treatment back in 1981 as opposed to radiation treatment without any surgery."

A hypothetical question need not include all material facts supported by the evidence, but it must include facts sufficient to represent the questioner's theory of the case. *Jines v. Young,* 732 S.W.2d 938, 947 (Mo.App.1987). The facts includable in a hypothetical question must be predicated on facts which are in evidence. *Garrett v. Joseph Schlitz Brewing Co.,* 631 S.W.2d 652, 654 (Mo.App.1982).

In this case, a history of fibrocystic disease was not relevant to the claim that appellant should have been told of the risk of infection where surgery is performed. There was no evidence presented by appellant indicating that a history of fibrocystic disease in any way bore on the incidence of infection in surgery cases. The information was simply irrelevant to the question put to the expert.

Whether a mammogram was a possible alternative to diagnosis by biopsy was also not relevant to the expert's opinion. Appellant adduced no evidence that a reasonably competent physician under similar circumstances would have been obligated to consider, much less to discuss with the patient, the possible use of a mammogram in place of the surgery to remove the suspicious growth. Because that evidence was not in the case, it could not have been included in the hypothetical question. Moreover, the obligation to inform the patient about risk of infection is only present, even under appellant's theory, if surgery is contemplated. If the suggested procedure is to be mammography, there would obviously be no occasion to discuss complications from surgery.

Finally, the progress of radiation therapy in 1981 was not a subject covered by any evidence in the case. The record does not indicate that appellant even argued the possibility that respondent should have considered radiation treatment. The subject at hand was diagnosis. Certainly the possibility that a malignancy would respond to radiation therapy would not be within the physician's disclosure responsibility when the nature of the tumor has not been ascertained. The trial court properly overruled appellant's objection to the hypothetical question.

◼ In a final point, appellant complains of respondent's closing argument and the failure by the court to sustain objections when respondent's attorney suggested the infection could have been caused by a nurse, that infection inevitably results in some percentage of surgeries and that respondent and his expert had testified that there was no alternative in appellant's case to the examination performed. Appellant says none of these propositions was supported by the evidence.

Determining the prejudicial effect of final argument is a matter within the discretion of the trial court, and its judgment on the matter will not be disturbed unless there was an abuse of discretion. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426, 434 (Mo. banc 1985). In this case, the issue for the jury to decide was whether respondent used the degree of skill and learning ordinarily used by physicians in similar circumstances when he dis-

cussed with appellant the appropriate course of medical procedures for examination of the lump in her breast. More specifically, the question was whether he should have disclosed the risk of infection. The trial judge could have concluded that it was immaterial to this issue whether the infection which did result was caused by a nurse or by some unidentified agency. There was no claim that respondent was negligent because an infection occurred, only that he did not warn appellant of the possibility. The comment that a nurse may have been responsible could not have influenced the jury's consideration of the duty owed to appellant of forecasting whether the event would occur.

The other remarks by respondent's counsel do treat respondent's evidence somewhat generously, but the conclusions stated are at least reasonable inferences from the evidence. It is not necessary to describe in detail the basis for this observation. Quoting only from the testimony of respondent's expert when questioned as to the typical female patient he sees with a solitary mass in her breast, he stated: "I would have probably told her that there is nobody that can tell you that it is benign or malignant short of a biopsy." The statement is reasonably subject to interpretation in the manner expressed by respondent's counsel in closing argument. The record does not support appellant's contention that the court abused its discretion by its rulings.

The judgment is affirmed.

All concur.