Bonnie CYPRET, Appellant,

v.

Glenn TEMPLETON, Respondent.

No. 67052.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 31, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 11, 1995.

Application to Transfer Denied
Jan. 23, 1996.

William M. Wunderlich, High Ridge, for appellant.

K. Steven Jones, Evans and Dixon, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Bonnie Cypret ("plaintiff"), appeals the judgment of the Circuit Court of the County of St. Louis denying her motion for a new trial based on the trial court's failure to submit a proffered instruction after a jury verdict in favor of respondent, Glenn Templeton ("defendant"), in plaintiff's personal injury action. We reverse and remand for a new trial.

On March 12, 1989, plaintiff was injured in a two car collision involving her car and the vehicle driven by defendant. Plaintiff was a passenger in a car driven by her husband, traveling north on Highway 109 in Eureka, Missouri; defendant was traveling south on Highway 109 in the same vicinity. Plaintiff's vehicle merged into the northbound lane's left-turn lane in order to make a left turn at the intersection of Highway 109 and East Fifth Street. The intersection is controlled by a traffic signal which gives the northbound lanes of Highway 109 a green left-turn arrow, a yellow left-turn arrow, and a green globe with a left-turn yield. The southbound lanes of Highway 109 have a red light during both the green and yellow arrows, and then have a green globe.

Plaintiff's evidence showed her vehicle had a green arrow when it reached the intersection and that her vehicle proceeded to turn left accordingly. Plaintiff's vehicle was traveling at approximately fifteen miles an hour. Plaintiff, her husband, and two other passengers in plaintiff's car testified they did not see the defendant until an instant before impact.

Debra Arflack, plaintiff's sister, was in her car following behind plaintiff's vehicle. She testified that plaintiff had a green arrow when her vehicle turned left, that after plaintiff's vehicle began its turn the green arrow turned yellow, and that when plaintiff's vehicle was already in its turn, Ms. Arflack noticed defendant's car five to six car lengths away from the intersection.

Defendant testified that, as he was proceeding down Highway 109, he looked and saw his light was green. He stated that he was approaching the intersection at fifteen to twenty miles an hour. He did not see the plaintiff's vehicle until it was across his lane turning left, at which point he swerved to his right and struck plaintiff's car.

Defendant's car impacted with plaintiff's front-side passenger panel. Plaintiff sustained injuries of varying degrees, including seven broken ribs, a fractured clavicle, abrasions, and emotional distress.

On March 5, 1992, plaintiff filed a petition with the circuit court alleging she sustained personal injuries as a result of defendant's negligent operation of his vehicle. Defen-

dant filed a motion to join plaintiff's husband as a third-party defendant, which was granted. A one-day trial took place on June 20, 1994. At the close of the evidence, the trial court granted a directed verdict in favor of plaintiff's husband, as the third-party defendant. The court then instructed the jury as to plaintiff's claim against defendant, directing the jury to find for plaintiff if they believed defendant negligently violated a traffic signal, thereby causing injury to plaintiff. The jury returned its verdict in favor of defendant. Plaintiff filed a motion for new trial which the trial court denied on October 4, 1994. This appeal follows.

■ In her motion for new trial and here on appeal, plaintiff contends the trial court erred in refusing to instruct the jury on the alternative theory hypothesizing defendant's failure to keep a careful lookout, in addition to his negligent violation of a traffic signal. When reviewing a claim of error for refusal to submit an instruction, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the party offering the instruction, and give that party the benefit of the favorable and uncontradicted evidence of the opposition. *Williams v. M.C. Slater, Inc.*, 590 S.W.2d 357, 359 (Mo.App.E.D.1979).

■ Every motorist entering an intersection is under a duty to exercise the highest degree of care to maintain a careful lookout both ahead and laterally. *Witt v. Peterson*, 310 S.W.2d 857, 860 (Mo.1958). An instruction on failure to maintain a careful lookout is premised on evidence that defendant saw or could have seen plaintiff in time to have avoided the accident. *Id.* The failure to maintain a careful lookout must be the proximate cause of the accident. *Yust v. Link*, 569 S.W.2d 236, 240 (Mo.App.St.L.D. 1978).

■ On appeal, plaintiff contends she made a submissible case on defendant's failure to maintain a careful lookout. We agree. The evidence showed plaintiff's vehicle to be traveling at a rate of fifteen miles an hour, while defendant, by his own testimony, was traveling twenty miles an hour as he approached the intersection. The day was sunny and clear, according to both parties. Little if any traffic was present on the road. Plaintiff's sister, Debra Arflack, testified defendant's vehicle was five to six car lengths away from the intersection when plaintiff's car had already proceeded to turn. Plaintiff's photographs, admitted into evidence, show defendant's clear and unobstructed view approaching the intersection. This evidence clearly supports plaintiff's contention that, had defendant maintained a careful lookout, he could have seen plaintiff's car in time to brake or take other precautionary measures to avoid the collision.

Defendant argues that to allow plaintiff to submit the failure to keep a careful lookout instruction would be to allow her to recover on a theory that is "at war" with the evidence she adduced at trial. The rule posited by defendant provides that a plaintiff cannot submit her case on evidence which is contradictory to her own evidence and theory. *Tomlin v. Alford*, 351 S.W.2d 705, 711 (Mo. 1961). He claims plaintiff proceeded on the theory that defendant ran a red traffic signal, and that to allow the jury to predicate recovery on failure to keep a careful lookout allows plaintiff to gainsay her own evidence.

■ Defendant's argument would have merit if the duty to maintain a careful lookout applied only to drivers proceeding on green traffic signals. However, as previously stated, the duty to maintain a careful lookout is a duty applying to all drivers on the road. Furthermore, the duty is not so narrow as to require drivers to watch only for other traffic, but rather, to require drivers to watch for the presence of persons and objects on the roads and to become aware of dangerous conditions and situations. *Rakestraw v. Norris*, 478 S.W.2d 409, 418–19 (Mo. App.Spfld.D.1972). Thus, the instruction on failure to maintain a careful lookout was not inconsistent with plaintiff's theory of the case. *See id.*

It appears from the transcript of the instruction conference that the trial court believed an instruction on failure to keep a careful lookout could only be given if the jury could find defendant had a green light and if the defendant's instruction on comparative fault against the third-party defendant

were given. This was erroneous, however, as the jury was entitled to determine whether it was defendant's failure to obey a traffic signal or defendant's failure to maintain a careful lookout which proximately caused the accident. The evidence supported the submission of the careful lookout instruction in addition to the instruction on failure to obey a traffic signal.

Based on the foregoing, the order of the trial court is reversed and hereby remanded for a new trial.

RHODES, J., concurs.

SMITH, P.J., dissents in a separate opinion.

SMITH, Presiding Judge, dissenting.

I respectfully dissent.

The failure to maintain a proper lookout does not give rise to liability unless the failure to maintain the lookout was the proximate cause of the accident. It does not become the proximate cause unless it results in a failure of the defendant to take evasive action which would have prevented the accident. In this case, no matter when the defendant would have been able to see plaintiff's vehicle, there existed no duty to take evasive action until the plaintiff was in a position of peril. That position did not occur until the plaintiff's vehicle was occupying a position wherein it was obvious that it was making a left turn into defendant's path. No testimony established the distances traveled by plaintiff's vehicle from the time it began its left turn, the distances traveled by the defendant after plaintiff was in a position of peril, or the time which elapsed from the point plaintiff reached a position of peril until the accident.[1] Plaintiff's testimony was that the time involved was virtually instantaneous, the "blink of an eye". There was no evidence that any evasive action of defendant could have avoided the accident when he first

could have become aware of plaintiff's position of peril. Plaintiff bears the burden of adducing evidence to support her claim of negligence by defendant.

It is not difficult to determine why the record lacks the evidence to support a lookout instruction. The plaintiff tried the case on the basis that defendant ran a red light and struck the plaintiff's vehicle. All of the evidence of distances, and the pictures used to illustrate those distances, was related to the defendant's ability to see the traffic lights involved substantially before he reached the scene. The lookout contention was not the focus of the plaintiff's case and the evidence to support that theory of liability was not developed. Having lost on her trial theory, plaintiff now seeks a new trial on the basis of a theory not supported by the evidence and which would have required gross speculation by the jury. I would affirm the judgment.

---

1. The majority apparently places considerable reliance on the sister's testimony that defendant was five or six car lengths away when plaintiff's vehicle had already started to turn. The witness was not asked what distance a car length encompassed. Assuming 15 feet, the defendant would have traveled at least 75 feet to reach the collision point. At 20 miles per hour that would require 2.5 seconds. In 2.5 seconds plaintiff's vehicle would have traveled 55 feet. Plaintiff's vehicle traversed 1½ lanes between turn and collision. She presented no testimony of the width of a lane but her photo exhibits show the lanes to be no wider than a car length. If the sister's testimony is relied upon to establish the lookout submission then the accident did not happen.