**Marian WUERZ, Plaintiff/Appellant,**

v.

**William HUFFAKER, M.D., and Plastic Surgery Consultants, Ltd., Defendants/Respondents.**

No. ED 77427.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 23, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 12, 2001.

Application to Transfer Denied
April 24, 2001.

Steven G. Schumaier, Robert G. Pennell, Steven Schumaier & Associates, P.C., Clayton, MO, for appellant.

Lawrence J. Hess, The Hess Law Firm, St. Louis, MO, for respondents.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff appeals from the judgment entered on a jury verdict in favor of her plastic surgeon and his professional corporation on plaintiff's claims arising out of the performance of a chemical peel in conjunction with elective cosmetic surgery consisting of a facelift and eyelid procedure. In the verdict director the jury was instructed on alternate theories of lack of consent and negligence in the performance of the chemical peel. On appeal, plaintiff argues that the trial court erred in refusing to add negligence in obtaining informed consent as another alternative theory in the verdict director. We affirm.

Plaintiff, Marian Wuerz, filed an action against defendants, Dr. William Huffaker and Plastic Surgery Consultants, Ltd., to recover damages she sustained as the result of a "TCA Peel" performed on her face in conjunction with other elective cos-

metic surgery on her face on January 11, 1995. In her amended petition she alleged defendants were negligent in numerous respects including Dr. Huffaker's failure to inform her of the risks associated with a TCA peel and failure to obtain her consent to perform the peel.

At trial plaintiff testified that she consulted Dr. Huffaker about a facelift and eyelid surgery. She met with him in July, 1994 and again on January 4, 1995. She testified that Dr. Huffaker never mentioned, explained, talked about, or suggested a TCA peel. She did not know what a TCA peel was. None of the consent forms she signed for the cosmetic surgery mentioned a TCA peel. She did not understand Dr. Huffaker was going to do a peel. Dr. Huffaker never asked her if she wanted a peel, and, if he had, she would have told him no. On January 11, 1995, when she arrived for surgery, Dr. Huffaker did not tell her that he was going to do a TCA peel.

The verdict director given by the court, Instruction 7, was modeled on MAI 21.01 and 21.02. It submitted the theories of lack of consent and negligence as follows:

Your verdict you [sic] must be for the plaintiff if you believe:

First, defendant William Huffaker, M.D. either:

performed a perioral chemical peel on the plaintiff without her consent, or performed a perioral chemical peel on the plaintiff in conjunction with a face lift procedure, and

Second, defendant William Huffaker, M.D. in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

By Instruction A, plaintiff sought to add the issue of negligence in obtaining in-

formed consent as another alternative theory in paragraph first, specifically that defendant:

performed a perioral chemical peel on the plaintiff without informing her of the risks associated with the procedure,

The trial court rejected this instruction.

■■■ An instruction must be supported by substantial evidence. *Kauzlarich v. Atchison, Topeka, and Santa Fe Ry. Co.*, 910 S.W.2d 254, 258 (Mo. banc 1995); *Elfrink v. Burlington Northern R. Co.*, 845 S.W.2d 607, 611 (Mo.App.1992). Where an instruction is disjunctive, all submissions must be supported by substantial evidence. *Elfrink*, 845 S.W.2d at 611. Substantial evidence is that evidence which, if true, is probative of the issues and from which the jury can decide the case. *Id.*

■■■ When a party claims the trial court erred in refusing an instruction, we view the evidence in the light most favorable to the submission of the instruction. *Kauzlarich*, 910 S.W.2d at 258. We give the offering party the benefit of any favorable inferences that may be drawn from the evidence and disregard the opponent's evidence in conflict therewith. *Cypret v. Templeton*, 912 S.W.2d 630, 632 (Mo.App. 1995). The party claiming error in the refusal of an instruction may take advantage of and rely on the opposing party's evidence that is favorable and does not contradict the proponent's evidence. *Id.* However, a party is bound by his or her own testimony on matters of fact unless corrected or explained. *Brandt v. Pelican*, 856 S.W.2d 658, 664 (Mo. banc 1993); *Zabol v. Lasky*, 555 S.W.2d 299, 304 (Mo. banc 1977); *Correale v. Hall*, 9 S.W.3d 624, 629 (Mo.App.1999); *Walkenhorst v. Lowell H. Listrom & Co., Inc.*, 752 S.W.2d 825, 828 (Mo.App.1988).

■■■ The elements of a claim for medical malpractice are: 1) an act or omission

by the defendant that failed to meet the requisite medical standard of care, 2) negligent performance of that act or omission, and 3) a causal connection between the act or omission and the plaintiff's injury. *Yoos v. Jewish Hospital of St. Louis,* 645 S.W.2d 177, 183 (Mo.App.1982). "The basic philosophy in malpractice cases is that the doctor is negligent by reason of the fact that he [or she] has failed to adhere to a standard of reasonable medical care and that consequently the service rendered was substandard and negligent." *Aiken v. Clary,* 396 S.W.2d 668, 673 (Mo.1965). This applies whether the alleged malpractice consists of improper care or treatment or a failure to sufficiently inform a patient to enable the patient to give informed consent to the treatment. *Id.*

"The doctrine of informed consent arose in recognition of the value society places on a person's autonomy and as the primary vehicle by which a person can protect the integrity of his body." *Cruzan by Cruzan v. Harmon,* 760 S.W.2d 408, 417 (Mo. banc 1988). In addition, common law "recognizes the right of individual autonomy over decisions relating to one's health and welfare." *Id.* at 416. In this context "informed consent" is defined as:

> 1. A person's agreement to allow something to happen, made with full knowledge of the risks involved and the alternatives. 2. A patient's knowing choice about treatment or a procedure, made after a physician or other healthcare provider discloses whatever information a reasonably prudent provider in the medical community would provide to a patient regarding the risks involved in the proposed treatment.

BLACK'S LAW DICTIONARY, 300 (7th ed.1999). ▮ "The doctrine is based on the patient's right to exercise control over his or her own body while undergoing elective treatment by making an informed choice whether to submit to the particular therapy." *Moser v. Stallings,* 387 N.W.2d 599, 602 (Iowa 1986).

▮ If a physician obtains a patient's consent, but the patient claims the physician failed to make an appropriate disclosure of risks and benefits, the action is in medical malpractice based on the physician's negligence to meet a recognized standard of care in obtaining the patient's consent. *Aiken,* 396 S.W.2d at 673; *Baltzell v. VanBuskirk,* 752 S.W.2d 902, 906 (Mo.App.1988); *Lounsbury v. Capel,* 836 P.2d 188, 193 (Utah App.1992) (citing *Baltzell* ); *Cobbs v. Grant,* 8 Cal.3d 229, 240–41, 502 P.2d 1, 8, 104 Cal.Rptr. 505, 512 (1972); *see also* 3 DAVID W. LOUISELL & HAROLD WILLIAMS, MEDICAL MALPRACTICE Section 22.03 (1998). The breach of care occurs as a result of the manner in which the physician has obtained the patient's consent.

▮ A medical malpractice action for negligence based on the doctrine of informed consent "is premised on the patient's actual consent to therapy without sufficient disclosure of the risks or alternates to the treatment." *Moser,* 387 N.W.2d at 602. Thus, a claim of negligence in obtaining informed consent presupposes consent to the procedure. *Wilkerson v. Mid–America Cardiology,* 908 S.W.2d 691, 700 n8 (Mo.App.1995).

▮ In contrast, in the absence of any consent, a physician is subject to liability for battery.[1] *Baltzell,* 752 S.W.2d at 906; LOUISELL & WILLIAMS, Sections 22.03, 8.06 (1998). To establish battery based on

---

1. In this case plaintiff submitted a claim for lack of consent, however she submitted it as negligence rather than as a battery. This submission is not a subject of this appeal.

lack of consent, a plaintiff is only required to prove the occurrence of unconsented touching. Louisell & Williams, Section 22.03. The sole question in such a case is whether the patient was informed of the nature of the procedure and consented to it. *Id.* Thus, expert testimony is not required and a plaintiff is not required to establish the other elements of a cause of action for lack of informed consent. *Id.* Lack of consent and negligence in obtaining informed consent are inconsistent causes of action because a factual predicate for a lack of consent claim is a finding that the patient did not consent to the procedure, whereas the underlying factual predicate for a claim based on negligence in obtaining informed consent is consent to the procedure. *Wilkerson,* 908 S.W.2d at 700 n8. If the patient has not consented to the treatment or procedure the physician cannot be liable for failure to use due care in obtaining that consent.

 To make a submissible case based on negligence in obtaining informed consent, a plaintiff must show non-disclosure, causation, and injury. *Wilkerson,* 908 S.W.2d at 696. To show non-disclosure, a plaintiff must include evidence of the risks involved and what disclosures were made by the doctor. *Aiken,* 396 S.W.2d at 673. Expert testimony of what risks a reasonable medical practitioner would disclose under the same or similar circumstances is required. *Id.* at 674–75. *See also, Wilkerson,* 908 S.W.2d at 696. A plaintiff must also establish causation between the inadequate disclosure and the injury. *Aiken,* 396 S.W.2d at 676. The issue is whether a reasonable person in plaintiff's position would have consented to the procedure had the proper disclosure been made. *Wilkerson,* 908 S.W.2d at 696–97. Plaintiff bears the burden of producing evidence from which a jury could determine whether a reasonable person

would have consented to the procedure. *Id.* at 697 (citing *Aiken,* 396 S.W.2d at 676).

Plaintiff argues that the following evidence supports submission of her claim for negligence in obtaining informed consent: a) her testimony that during the January 4 office visit, while discussing the facelift and eyelid procedure, Dr. Huffaker "said that he'll see what he can do about that, about my smile marks;" b) Dr. Huffaker's office notes of the January 4 visit in which he wrote: "The patient is very concerned about lines on her face and I stressed to her that we would need some chemical treatment of those lines in addition to the facelift" and in which he did not mention advising plaintiff of any of the risks, benefits or alternatives of a chemical peel; c) her testimony that she did not know what a TCA peel was, it was never discussed with her, she was never told of the risks, she never signed a consent for a TCA peel, and she was never told about a TCA peel; d) her testimony that, if Dr. Huffaker had asked her if she wanted a TCA peel, she would have told him no; e) Dr. Glaser's testimony that it was beneath the standard of care not to list the peel on the consent form; and f) Dr. Young's testimony on cross examination that the normal standard is for the physician to document in the office notes the advice given to the patient explaining the risks, benefits and available alternate procedures. Plaintiff argues that these facts constitute sufficient evidence to submit the case on the issue of negligence in obtaining informed consent as an alternative theory to lack of consent. We disagree.

 In this case plaintiff's testimony that she had never consented to a chemical peel precluded a claim based on lack of informed consent. Plaintiff unequivocally and repeatedly testified that she never consented to the chemical peel, had no

knowledge that one was being performed, and would not have consented to one if asked. Plaintiff is bound by her own testimony which is not explained or corrected. *Brandt*, 856 S.W.2d at 664; *Zabol*, 555 S.W.2d at 304; *Correale*, 9 S.W.3d at 629; *Walkenhorst*, 752 S.W.2d at 828. Her testimony precludes submission based on a claim that she explicitly or implicitly consented to a chemical peel. In the absence of any consent, plaintiff does not have a claim for malpractice based on negligence in obtaining informed consent.

In addition, plaintiff did not make a submissible case for negligence in obtaining informed consent because she did not adduce expert testimony concerning what risks were involved and what risks a reasonable medical practitioner would disclose, which is required. *Aiken*, 396 S.W.2d at 674–75. *See also Baltzell*, 752 S.W.2d at 908. The evidence on which plaintiff relies does not include any such expert testimony.

For all the above reasons, plaintiff did not make a submissible case of malpractice based on negligence in obtaining informed consent and the trial court did not err in refusing to instruct on this theory. The judgment of the trial court is affirmed.

MARY K. HOFF, C.J. and ROBERT E. CRIST, Sr. J., concur.