**Amanda CRIDER, Plaintiff/Appellant,**

**v.**

**BARNES–JEWISH ST. PETERS HOS-PITAL, INC. d/b/a Barnes–Jewish St. Peters Hospital, Defendant/Respondent.**

No. ED 96907.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 17, 2012.

Application for Transfer to Supreme Court Denied Feb. 23, 2012.

Application for Transfer Denied
May 1, 2012.

128

Jeffrey S. Damerall, Jeffrey S. Damerall, LLC, St. Louis, MO, for appellant.

Jonathan H. Garside, Fox Galvin, LLC, Katherine M. Fowler, Erika N. Reynolds, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff appeals from the trial court's judgment dismissing her petition, which sought damages against defendant hospital, for plaintiff's failure to file a health care affidavit as required by section 538.225 RSMo (Cum.Supp.2008).[1] Plaintiff asserts that she was not required to file an affidavit because her petition did not allege that defendant improperly rendered or failed to render health care services. We affirm.

## PROCEDURAL BACKGROUND

Plaintiff, Amanda Crider, filed a lawsuit against defendant, Barnes–Jewish St. Peters Hospital, to recover damages for personal injuries alleged to have been caused after receiving an epidural. As amended, her petition alleged that defendant was "a medical facility" and provided "medical services" to the general public; that she was a deaf individual who relies on American Sign Language Interpreters; that she was admitted into defendant's facility to give birth, when she was in labor; that she had notified defendant that she desired to have a natural childbirth without an epidural or other pain medications and had refused consent to any such medications unless absolutely necessary; that while plaintiff was under defendant's care, plaintiff's "healthcare providers at Defendant's facility encouraged Plaintiff to have an epidural, but could not and did not provide her with interpretation services to assist in explaining why they felt an epidural was necessary;" that because defendant "did not take reasonable measures to accommodate Plaintiff, its medical staff and Plaintiff's doctors could not effectively explain the risks and benefits of the epidural to Plaintiff, and could not understand Plaintiff's wishes and instructions with respect to her care," and that by failing to arrange for interpretation services "Defendant prevented Plaintiff's medical providers from being able to obtain informed consent from Plaintiff;" that plaintiff "mistakenly be-

**1.** All further statutory references are to RSMo (Cum.Supp.2008).

lieved that the epidural was medically necessary" and did not understand the risks and benefits of the epidural; that after she gave "uninformed consent" to the procedure, plaintiff's medical providers inserted the epidural into her spine; that she was physically injured by the epidural and immediately experienced, and continues to suffer, pain and disabling symptoms; and that she has incurred medical expenses and will continue to do so, as well as reasonable attorney's fees in pursuing her claim against defendant. She specifically alleged:

> 18. The injuries Plaintiff suffered are risks associated with epidural procedures, and she was entitled to know those risks, along with the purpose of the epidural, before agreeing to it. Defendant's failure to accommodate Plaintiff prevented its own medical staff and Plaintiff's physicians from being able to obtain informed consent from Plaintiff, prevented Plaintiff from being able to give her informed consent, and proximately caused Plaintiff to suffer her above-described injuries.

In her prayer for relief, plaintiff sought a finding that defendant was guilty of violating the Missouri Human Rights Act (MHRA), and an award of actual and punitive damages and her reasonable attorney's fees.

Defendant filed a motion to dismiss plaintiff's amended petition for failure to file a health care affidavit as required by section 538.225. Although the trial court gave plaintiff ten days to file a health care affidavit and to make a more definite statement of her claim, plaintiff filed a memorandum stating that "she will not file a health care affidavit or amend her petition," because her petition stated a cause

of action under the MHRA rather than a claim under Chapter 538 for medical malpractice. In an order that was subsequently denominated as a judgment, the trial court dismissed plaintiff's amended petition for failure to file a health care affidavit pursuant to section 538.225.

## DISCUSSION

### I. Health Care Affidavit

In her first point, plaintiff contends that the trial court erred in dismissing her petition for failure to file a health care affidavit pursuant to section 538.225 because "the Action is not Subject to the Provisions of RSMo. Sec. 538.225 in that the [plaintiff's] Allegations do not Pertain to the Rendering or Failure to Render Health Care Services."[2] We disagree. A health care affidavit was required under the facts alleged in plaintiff's petition.

Chapter 538 governs tort actions based on improper health care. Section 538.225.1 requires a plaintiff to file a health care affidavit "[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services." Section 538.225.1 requires the affidavit to state that the plaintiff "has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition."

**2.** Our review of a point is confined to the arguments raised in the point relied on. *Minor v. Rush,* 216 S.W.3d 210, 213 n. 2 (Mo. App.2007). *See Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978).

Section 538.225.6 requires the trial court to dismiss an action without prejudice if the plaintiff fails to file the affidavit. Section 538.225; *Devitre v. Orthopedic Center of St. Louis*, 349 S.W.3d 327, 331 (Mo. banc 2011). "The affidavit procedure of § 538.225 serves to free the court system from frivolous medical malpractice suits at an early stage of litigation, and so facilitate the administration of those with merit." *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 510 (Mo. banc 1991).

■ We review a trial court's grant of a motion to dismiss *de novo*. *Devitre*, 349 S.W.3d at 331. We determine whether a party must file a health care affidavit by considering whether the relationship between the parties is one of health care provider and patient, and if the "true claim" relates only to the provision of health care services. *Id.* at 332–34. This analysis applies no matter how a plaintiff characterizes his or her claims. *Id.* at 334. We will not allow a plaintiff to disguise his or her medical malpractice claim in order to avoid filing a health care affidavit. *Id.* at 332; *see also J.K.M. v. Dempsey*, 317 S.W.3d 621, 626–27 (Mo.App.2010) (claim of breach of fiduciary duty); *Mello v. Giliberto*, 73 S.W.3d 669, 679 (Mo.App.2002) (claims of medical malpractice, battery, lack of informed consent, and wrongful death); *Vitale v. Sandow*, 912 S.W.2d 121, 122 (Mo.App.1995) (claim of libel); *St. John's Reg'l Health Ctr., Inc. v. Windler*, 847 S.W.2d 168, 171 (Mo.App.1993) (claim of false imprisonment); *Jacobs v. Wolff*, 829 S.W.2d 470, 471–72 (Mo.App.1992) (claims of tortious interference with contract, negligent infliction of emotional distress, negligence, and prima facie tort).

■ We first consider whether the relationship between the parties is one of health care provider and patient. A "health care provider", as used in Chapter 538, is statutorily defined as follows:

(4) **"Health care provider"**, any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility including those licensed under chapter 198, RSMo, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate[.]

Section 538.205(4). "Health care services", as used in Chapter 538, are defined as follows:

(5) **"Health care services"**, any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized[.]

Section 538.205(5).

" 'Patient' is defined as (1) 'a sick individual esp. when awaiting or under the care and treatment of a physician or surgeon;' and (2) 'a client for medical service (as of a physician or dentist).' " *Devitre*, 349 S.W.3d at 333 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1655 (1993)).

In her amended petition, plaintiff alleged that defendant was a "medical facility," and that defendant provided "medical services to the general public." Plaintiff further alleged that she was admitted to defendant's facility "to give birth" and that she was under defendant's "care." Under

the facts alleged, the relationship between the parties was one of health care provider and patient.

■■■ We next consider whether the "true claim" relates only to the provision of health care services. "If a physician obtains a patient's consent, but the patient claims the physician failed to make an appropriate disclosure of risks and benefits, the action is in medical malpractice based on the physician's negligence to meet a recognized standard of care in obtaining the patient's consent." *Wuerz v. Huffaker*, 42 S.W.3d 652, 656 (Mo.App. 2001). *See also Devitre*, 349 S.W.3d at 334 n. 5. "The breach of care occurs as a result of the manner in which the physician has obtained the patient's consent." *Wuerz*, 42 S.W.3d at 656.

In this case, plaintiff's "true claim" relates only to the provision of health care services because the wrong alleged was the manner in which defendant obtained plaintiff's consent to the epidural. When a plaintiff's "true claim" is that a defendant failed to appropriately obtain informed consent, a health care affidavit is required. *J.K.M.*, 317 S.W.3d at 627.

The trial court did not err in dismissing plaintiff's action for failure to file a health care affidavit pursuant to section 538.225. Point one is denied.

## II. *Absurd Result*

In her second point, plaintiff asserts that the trial court erred in dismissing her action for failure to file a health care affidavit pursuant to section 538.225 because the application of this statute to plaintiff's action "would lead to an absurd result in that a Legally Qualified Health Care Provider Cannot Render a Competent Opinion Regarding the Requirements of the Missouri Human Rights Act." Since plaintiff's true claim is medical malpractice, point two is denied as moot.

*Conclusion*

The judgment of the trial court is affirmed.

KENNETH M. ROMINES and ROBERT M. CLAYTON III, JJ., concur.