

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| MARY ANN THOMAS, | ) | No. ED98955 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Mark D. Seigel |
| AMY K. MILLER, M.D., | ) | |
| | ) | Filed: |
| Respondent. | ) | June 17, 2014 |

Mary Ann Thomas appeals from the granting of summary judgment on her claims against Amy K. Miller, M.D., for injuries arising from an abdominoplasty performed after liposuction. The motion for summary judgment was based on Thomas's failure to submit a health care affidavit in accordance with Section 538.225.1. Thomas argues that her claim against Dr. Miller was for battery and, therefore, she was not required to file a health care affidavit. Even if she was so required, Thomas contends, the trial court should have dismissed her case without prejudice instead of entering summary judgment. We find that a health care affidavit is required in this case, but agree that the case should be dismissed without prejudice.

Dr. Miller performed liposuction and an abdominoplasty (or skin recision) on Thomas in December of 2006. In October of 2010, Thomas filed a petition against Dr. Miller for damages resulting from the abdominoplasty, alleging medical negligence,

informed consent negligence, negligence *res ipsa loquitor* and battery.[1]  Ultimately, all counts except the battery claim were dismissed without prejudice on the defendant's motion to dismiss for failure to file an affidavit as required by Section 538.225.1.[2] Thomas had made no attempt to file a health care affidavit that complied with the statute until the hearing on Dr. Miller's motion to dismiss, and filing the affidavit at that point was untimely.  See Section 538.225.5 (affidavit must be filed within 90 days of the filing of the petition unless court grants up to an additional 90 days for good cause shown). The count that remained alleged that Dr. Miller "intentionally inserted a scalpel in Plaintiff's abdomen and performed a surgical procedure called an abdominoplasty. Plaintiff was not informed of the nature of the procedure and did not consent to it." Thomas pled that she "suffered an improper placement of the incision, a wound edge discrepancy, infection, excess drainage, an infected hematoma, scarring, abdominal numbness, and a weakened abdominal wall," among other damages.

Dr. Miller filed a motion for summary judgment, arguing again that Thomas was required to file an affidavit on her remaining count because, despite being titled "battery," the true claim was for medical negligence.  Dr. Miller requested summary judgment in her favor and, in the memorandum in support, specified that the petition should be dismissed without prejudice.  Thomas responded that she had pled the necessary elements of a medical battery claim—namely, a nonconsensual touching—and that no health care affidavit was required in this case.  Before the trial court on that motion were portions of the parties' depositions and the deposition of Dr. Hubert Weinberg (plaintiff's medical expert), all of which appear to have been taken during

---

[1] Thomas previously filed the same action against Dr. Miller, conducted discovery and then voluntarily dismissed the case.

[2] Initially all four counts were dismissed, but that dismissal was set aside and the case was reopened.

discovery conducted in the suit Thomas had voluntarily dismissed before filing this petition. With her response, Thomas also filed her own affidavit. After a hearing, the trial court issued an order and judgment, finding that plaintiff's true cause of action was one for medical negligence, which required the filing of a health care affidavit. The trial court granted the motion for summary judgment and entered judgment in favor of the defendant. This appeal follows.

In her first point on appeal, Thomas maintains her argument that Section 538.225 does not apply because her true claim is medical battery. We disagree.

Section 538.225.1 states:

In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

We review the trial court's interpretation and application of Section 538.225.1 *de novo*. Devitre v. Orthopedic Center of St. Louis LLC, 349 S.W.3d 327, 331 (Mo. banc 2011). We apply a two-part test to determine whether a plaintiff is required to file a health care affidavit under the statute. Id. at 331-32. First, we must determine whether the relationship between the parties is that of health care provider and recipient. Id. Here, there is no dispute that Dr. Miller was a health care provider and Thomas the recipient. Second, we must determine whether the true claim relates solely to the provision of health care services. Id. at 332. "This analysis applies no matter how a plaintiff characterizes his or her claims. We will not allow a plaintiff to disguise his or her

3

medical malpractice claim in order to avoid filing a health care affidavit." Crider v. Barnes-Jewish St. Peters Hospital, Inc., 363 S.W.3d 127, 130 (Mo. App. E.D. 2012).

Thomas relies on Devitre for the proposition that as long as the essential elements of a battery claim are properly pled, the claim is not one for medical malpractice and no affidavit is required. In Devitre, the Supreme Court pointed out that substance is to be elevated over form when reviewing the true nature of a petition. 349 S.W.3d at 334. There, like here, the plaintiff argued that his claim was for battery. Id. Within the context of medical treatment, a battery can occur when a physician performs a medical procedure without consent. Id. To establish battery on the grounds that the physician lacked consent, the plaintiff must plead and prove that consent was not given or was withdrawn. Id. In Devitre, the plaintiff had alleged that he was intentionally assaulted and battered when the doctor forced him to move his arm beyond its range of motion causing pain and other damage. Id. at 334-35. Attached to his petition was a transcript of the recording of the doctor's examination. Id. at 335. It revealed that the plaintiff had told the doctor "don't press on me" and "don't do that doctor." Id. The Court concluded that he had not alleged a nonconsensual touching because there was no indication that the plaintiff had pulled his arm away or told the doctor to stop the exam. Id. Thus, the true nature of that claim was medical malpractice, not battery, and an affidavit was required under Section 538.225.1. Id.

Thomas contends that she pled a nonconsensual touching as required by Devitre. Perhaps on the face of the petition alone, one could conclude that Thomas has stated a claim for medical battery because she alleged that she "did not consent" to the abdominoplasty. This may be why that count survived the motion to dismiss, where the

4

court considers only what is contained in the pleadings. See id. at 331. Thomas argues that neither the law nor the facts changed between the denial of the motion to dismiss and the granting of the summary judgment motion. But the materials the court had before it to consider in determining the true nature of Thomas's claims changed: excerpts from the parties' deposition and the medical expert's testimony were attached to both the motion for summary judgment and the response, and Thomas also included her own affidavit with her response. Thomas contends that the court improperly considered these matters outside the pleadings, including the ones she herself put before the court. She cites Devitre again to support the proposition that only the pleadings may be considered in determining the necessity of filing a health care affidavit. In that case, however, the issue arose on a motion to dismiss. Id. Here, the issue has arisen on a motion for summary judgment.

We have found no other Missouri state case in which the health care affidavit requirement in Section 538.225 was raised as an issue in a motion for summary judgment. There is one federal district court case dismissing a case for failure to file an affidavit under this statute on a defendant's motion for summary judgment. Prosser v. Nagaldinne, 2013 WL 308770 at *1 (E.D.Mo. January 25, 2013) (slip op.). There appears to be nothing in the statute that precludes the issue from being raised in this way or at this stage in the litigation. When a party fails to file an affidavit, the case is to be dismissed "upon motion of the party." Section 538.225.6. The statute does not specify or limit the type of motion. Moreover, although the purpose of the affidavit requirement is to eliminate frivolous medical malpractice claims at an early stage of litigation, there are no time constraints on when a party can move to have the case dismissed for failure to

5

file that affidavit.  See Crider, 363 S.W.3d at 130 (discussing purpose of statute generally).  We see no reason why this issue cannot be raised at any time on any type of motion—weeding out frivolous claims even at this later stage in the case serves the statute's purpose.  Moreover, it was proper to consider the matters outside the pleadings to determine the true nature of this claim.  See Spears ex rel. Clendening v. Freeman Health Systems, 403 S.W.3d 616, 622 n. 4 (Mo. App. S.D. 2012) (trial court properly considered testimony outside pleadings, without objection from plaintiff, on motion to dismiss for failure to file health care affidavit because motion based on facts outside the record).

The record before the trial court on this motion for summary judgment demonstrates that—despite alleging that she did not consent—the true nature of Thomas's claim involves the *manner* of her consent to the abdominoplasty and whether Dr. Miller deviated from the standard of care in accepting that consent.  In Crider, this Court addressed the difference between lack of consent and manner of consent when determining whether a plaintiff's true claim is for medical negligence.  363 S.W.3d at 131.  In that case, the plaintiff, who was deaf, alleged that when she was admitted to the hospital to give birth, she notified the defendant's staff of her desire to have a natural delivery without an epidural.  Id. at 128.  She alleged that she refused to consent to any pain medication that was not absolutely necessary.  Id.  She alleged that she was encouraged to have the epidural, but was not provided an interpreter to explain with sign language why an epidural was necessary.  Id.  The plaintiff asserted that, without an interpreter, the defendants could not effectively explain the risks and benefits of an epidural and could not understand the plaintiff's wishes and instructions and thereby did

6

not obtain "informed consent" from the plaintiff.  Id. at 128-29.  This Court found that the true claim was for medical negligence, not a Missouri Human Rights Act violation as plaintiff had stated in her petition.  Id. at 131.  The Court found that the wrong alleged was the *manner* in which the defendant obtained consent to the epidural.  Id.  "When a plaintiff's 'true claim' is that a defendant failed to appropriately obtain informed consent, a health care affidavit is required."  Id.

Here, Thomas stated in her affidavit that before the liposuction, she had told Dr. Miller that she did not want any surgical procedure to remove excess skin because she could not take the extra time off work to heal from any additional surgery.  She also testified that she had "no recollection of having any conversation with Defendant or anyone in Defendant's office between the time period the sedatives took effect in the morning prior to the tumescent liposuction procedure and when I awoke at approximately 4:30 p.m."

Dr. Miller's handwritten notes after the liposuction indicate that the abdominoplasty was performed "after discussion" with patient.  Dr. Miller testified that Thomas had been asleep during the liposuction, but that after she awoke and stood up, Dr. Miller could see that there was excess skin that needed to be fixed.  At that point, according to Dr. Miller, Thomas "was awake and conversing with us."  Thomas appeared "alert" to Dr. Miller or they would not have asked her to stand up.  Once it was determined that Thomas was alert, Dr. Miller stated that she discussed the possibility of skin recision with Thomas and at some point Thomas said yes.  Dr. Miller indicated that she got "verbal consent" from Thomas twice.

Dr. Weinberg testified that Thomas did not recall the post-liposuction discussions with Dr. Miller because Thomas was under the influence of the pre-operative medications when and if any discussion occurred regarding the need for abdominoplasty. Thus, she was "not aware and alert to make an informed consent." Also, according to Dr. Weinberg, Thomas was particularly sensitive to medication and Dr. Miller should have known to give her only half the pre-operative medication dosage. He testified that the possibility of a skin recision should have been discussed with Thomas before any medication was given and written consent obtained prior to the day of surgery. Dr. Weinberg also testified that Dr. Miller deviated from the standard of care in the operation procedures themselves.

Thomas does not claim that she did not consent immediately after the liposuction—rather, Thomas claims she cannot remember anything from the time she was sedated until she woke up after the abdominoplasty. As in Crider, the true nature of Thomas's claim revolves around whether she was in any condition to give informed consent and whether the doctor should have accepted that consent. In the same way any conversations the deaf patient had with the doctors in Crider were allegedly affected by the lack of a sign language interpreter, Thomas's consent was allegedly affected by her sedation. Therefore, the question here is whether Dr. Miller failed to appropriately obtain informed consent and, as in Crider, a health care affidavit was required.

Point I is denied.

In her second point on appeal, Thomas claims that the trial court erred by entering summary judgment in favor of Dr. Miller because the only remedy for failure to file an affidavit pursuant to Section 538.225.1 is dismissal without prejudice.[3] We agree.

Section 538.225.6 of the statute requires the trial court to dismiss the action without prejudice, upon motion of the party, if the plaintiff does not file a health care affidavit. See id. at 130; see also SSM Health Care St. Louis v. Schnieder, 229 S.W.3d 279, 287 (Mo. App. E.D. 2007) (upon motion, dismissal is mandatory, not discretionary as in earlier version of statute). The trial court commits error when it dismisses a case with prejudice under these circumstances. See Devitre, 349 S.W.3d at 330 n 3. As discussed above, the failure to file an affidavit was raised in a motion for summary judgment, which normally requires the court to reach the merits of the case. But it clearly did not reach the merits here and stated in its order that the motion was being granted for the failure to comply with the health care affidavit statute. In this situation, dismissal without prejudice is the proper remedy even though the issue was raised in a motion for summary judgment. See Borges v. Missouri Public Entity Risk Management Fund, 358 S.W.3d 177, 184 (Mo. App. W.D. 2012) (where standing argument raised in motion for summary judgment or other motion including matters outside pleadings, court must enter dismissal not summary judgment).

Point II is granted.

We affirm the trial court's finding that Thomas was required to file an affidavit under Section 538.225.1 and failed to do so. We reverse the entry of summary judgment

---

[3] Dr. Miller argues that this point is moot because there is a docket entry indicating the case was dismissed without prejudice. That entry is from May of 2011, when the court granted the motion to dismiss as to all counts. That order then was set aside, and the case was reopened and disposed of by this summary judgment as indicated in the August 2012 docket entry showing the case disposition as "tried by court."

in Dr. Miller's favor and enter the order the trial court should have entered, dismissing Thomas's petition without prejudice. <u>See</u> Rule 84.14.

_____

ROBERT G. DOWD, JR., Judge

Lawrence E. Mooney, P.J. and
Sherri B. Sullivan, J., concur.