**J.K.M., Plaintiff–Appellant,**

v.

**Kenneth J. DEMPSEY, M.D., Defendant–Respondent.**

**No. SD 29791.**

Missouri Court of Appeals, Southern District, Division One.

July 28, 2010.

Daniel H. Rau, Cape Girardeau, MO, for Appellant.

Robert J. Amsler, Jr., and David L. Hares, St. Louis, MO, for Respondent.

DON E. BURRELL, Judge.

J.K.M. ("Plaintiff")[1] appeals the trial court's dismissal of his civil damages action against Kenneth J. Dempsey, M.D. ("De-

---

1. The events described in Plaintiff's petition were alleged to have occurred when Plaintiff was twelve years' old. Plaintiff's petition was filed six years later. Because this lawsuit was prosecuted in Plaintiff's own name, we presume it was not filed until after his eighteenth birthday. *See* Rule 52.02 (requiring that civil actions by minors "may be commenced and prosecuted only by a duly appointed guardian of such minor, or if there is no such guardian, by a next friend appointed in such civil action[.]") Rule 52.02(a), Missouri Court Rules (2007). As the record does not reveal the actual date of Plaintiff's birth, we identify him only by initials out of an abundance of caution. In any event, Plaintiff will have attained the age of majority by the time any new lawsuit might be filed.

fendant") based on Plaintiff's failure to timely file the health care affidavit required by section 538.225.[2] Although Plaintiff attempted to avoid characterizing his claims against Defendant as based on medical negligence, the factual averments set forth in Plaintiff's petition required that such an affidavit be filed. Because Plaintiff did not file a health care affidavit within the time allowed by statute, the trial court was required to dismiss Plaintiff's action without prejudice upon Defendant's motion and its judgment doing so is affirmed.

## Factual and Procedural Background

■ When reviewing the trial court's dismissal of a petition, we treat the facts pleaded as true and construe all averments liberally and favorably to the appellant. *Kanagawa v. State,* 685 S.W.2d 831, 834 (Mo. banc 1985). In accordance with that standard, the following is a summary of the factual averments of Plaintiff's petition.

On April 4, 2001, Plaintiff was taken by his mother to Ferguson Medical Group in Sikeston, Missouri for the treatment of warts he had on his right hand. At that medical facility, Defendant told Plaintiff and his mother that he was going to inject Plaintiff with the "famous Swiss wart burner vaccine." Defendant then inserted an 18–gauge needle into Plaintiff's right buttock and injected what he later revealed to Plaintiff's mother was merely a saline solution.[3] Plaintiff claims that Defendant did not have Plaintiff's consent to insert the needle into his body or inject him with saline solution and that any alleged consent was obtained by fraud and deceit.

Plaintiff's claims against Defendant were characterized as breach of fiduciary duty and assault and battery. Plaintiff's petition further alleged that "as a direct and proximate result of the aforementioned breach of fiduciary duty by [Defendant], [Plaintiff] has suffered physical injury, severe emotional distress, depression, great indignity, humiliation, nervousness, anxiety and worry."

Along with his answer to Plaintiff's petition, Defendant filed a "Motion to Dismiss for Failure to File Health Care Affidavit, pursuant to Section 538.225[.]" The trial court heard Defendant's motion to dismiss on June 26, 2008, at which time it granted Plaintiff thirty days to obtain the required health care affidavit. Plaintiff obtained the affidavit of Dr. James E. Palen, M.D. on July 11, 2008. Presumably in response to the filing of that affidavit, the trial court held a follow-up hearing on July 24, 2008. At that hearing, Defendant again moved to dismiss the petition, based on several alleged deficiencies in the affidavit obtained from Dr. Palen. Defendant's specific complaints were:

a) It states that the health care provider believes [Defendant] breached the standard of care but fails to use the language set forth in the statute leaving to question whether the health care provider believes [Defendant] failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances;

b) It states the health care provider believed the breach of the standard of care was the proximate and direct cause of injury but fails to follow the statutory requirement that the health care provider must believe that [Defendant] failed to use such care as a reasonably prudent

---

**2.** Unless otherwise indicated, all statutory references are to RSMo, Cum.Supp.2006.

**3.** Defendant's purported reason for injecting the saline was for its placebo effect.

and careful health care provider would have under similar circumstances;

c) It fails to state whether James Palen, M.D. is licensed;

d) It fails to state whether James Palen, M.D. is currently practicing or whether he authored the written opinion within five years of his retirement;

e) It states that James Palen, M.D. is a general practitioner and he is not in the specialty of [Defendant], who practiced as a dermatologist and;

f) The health care affidavit fails to provide the address and qualifications of James Palen, M.D.

Defendant supported his motion with an affidavit in which he set out his specialization as a board-certified dermatologist. At the close of this hearing, the trial court granted Plaintiff an additional thirty days in which to obtain an appropriate health care affidavit. Plaintiff then filed an amended health care affidavit four days after the trial court's thirty-day deadline had expired.

Plaintiff apparently understood that his amended affidavit was still deficient and requested by motion additional time, up to September 19, 2008, to obtain an amended affidavit in conformity with the trial court's order. Although the trial court granted this request for additional time, Plaintiff never filed such an amended affidavit.[4]

On September 18, 2008, Defendant filed his "Fourth Amended Motion to Dismiss for Failure to File Health Care Affidavit Pursuant to § 538.225, R.S.Mo[.]" This motion asserted, among other things, that the trial court lacked the "power to extend the time for [Plaintiff] to submit an affidavit pursuant to § 538.225, R.S.Mo. after the expiration of the first one hundred

eighty (180) days." On April 1, 2009, the trial court entered an order dismissing Plaintiff's case. On May 26, 2009, the trial court incorporated its previous order of dismissal and designated it as a judgment. Plaintiff now appeals that judgment of dismissal.

### Analysis

Plaintiff's two points on appeal are not in compliance with the requirements of Rule 84.04(d).[5] As Defendant has addressed Plaintiff's points on the merits and we do not believe the deficiencies substantially impede appellate review, we review Plaintiff's points *ex gratia*. *See DeLong Plumbing Two, Inc. v. 3050 N. Kenwood LLC*, 304 S.W.3d 784, 788 (Mo.App. S.D. 2010). The gist of Plaintiff's first point is that the trial court erred in requiring him to obtain a health care affidavit at all "in that there was no medical treatment provided by [Defendant] and he: breached the fiduciary duty owed to [Plaintiff]; that [Plaintiff] was assulted [sic] and battered by [Defendant]; and, that [Plaintiff] is entitled to puntivie [sic] damages as a result of the breach of fiduciary duty and/or being assaulted and battered." Plaintiff's second point alleges, *in toto*, "The trial court erred in finding that the affidavit filed by [Plaintiff] in compliance with § 538.225 was deficient."

### *Standard of Review*

 We review the grant of a motion to dismiss by the circuit court *de novo*. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. banc 2007). Matters of statutory interpretation and the application of the statute to specific facts are also re-

---

4. The amended affidavit Plaintiff did file was ruled defective by the trial court in its Judgment and Order dated April 1, 2009.

5. All rule references are to Missouri Court Rules (2010).

viewed *de novo. Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 23 (Mo.App. E.D.2005).

*Point I: Was an Affidavit Required?*

Section 538.225 provides:

1. In *any action* against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. As used in this section, the term **"legally qualified health care provider"** shall mean a health care provider licensed in this state or any other state in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant.

3. The affidavit shall state the name, address, and qualifications of such health care providers to offer such opinion.

4. A separate affidavit shall be filed for each defendant named in the petition.

5. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

6. If the plaintiff or his attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice.

7. Within one hundred eighty days after the filing of the petition, any defendant may file a motion to have the court examine in camera the aforesaid opinion and if the court determines that the opinion fails to meet the requirements of this section, then the court shall conduct a hearing within thirty days to determine whether there is probable cause to believe that one or more qualified and competent health care providers will testify that the plaintiff was injured due to medical negligence by a defendant. If the court finds that there is no such probable cause, the court shall dismiss the petition and hold the plaintiff responsible for the payment of the defendant's reasonable attorney fees and costs.

Section 538.225 (emphasis added).

Missouri courts have interpreted this section as applying to more than just medical negligence causes of action. Our Supreme Court has stated that "by using the words 'any action' in sec. 538.225.1, the legislature clearly demonstrated its intent that the statute not only apply to a negligence action" but should include other claims of personal injury against a health care provider. *Budding v. SSM Healthcare Sys.,* 19 S.W.3d 678, 680 (Mo. banc 2000). The legislature also "intended to impose specific limitations on the traditional tort causes of action available against a health care provider." *Id.* "Included in these limitations is [ . . . ] the requirement that the cause of action be dependent upon an affidavit by a 'legally qualified health care provider' of failure to exercise reasonable care attributable to the defendant health care provider[.]" *Id.* (quoting section 538.225).

■ The appropriate question to ask when determining if a health care affidavit is required is whether the allegations against the defendant arise from the defendant's actions as a health care provider.[6] *See Jacobs v. Wolff,* 829 S.W.2d 470, 472 (Mo.App. E.D.1992). The plaintiff in *Jacobs* sued Dr. Wolff on theories of tortious interference with contract, negligent infliction of emotional distress, negligence, and prima facie tort. *Id.* at 471. The Eastern District held that section 538.225 applied because the claim for damages related to wrongful acts alleged against a health care provider, regardless of how the claims were characterized by the plaintiff. *Id.* at 472. *See also Gaynor v. Washington Univ.,* 261 S.W.3d 650, 653–54 (Mo. App. E.D.2008) (a health care affidavit is still required by section 538.225 in a personal injury action in which proof is based on *res ipsa loquitur* ).

"Health care services" are statutorily defined in Section 538.205(5) as

Any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized[.]

Section 538.205(5). *See also Mello v. Giliberto,* 73 S.W.3d 669, 679 (Mo.App. E.D. 2002) (quoting section 538.205(5) and holding that a health care affidavit was required when the plaintiff's true claims related to the wrongful acts of health care providers in providing health care services to the patient and the requested damages were for the patient's personal injuries and resulting death).

This court addressed whether the health care affidavit required by section 538.225 must be filed in an action based on an intentional tort in *St. John's Reg'l Health Ctr., Inc. v. Windler,* 847 S.W.2d 168, 171 (Mo.App. S.D.1993). In *St John's,* expounding on *Jacobs,* we articulated the test as follows: "[I]f a court determines that the relationship of the parties is that of health care provider and recipient and that the 'true claim' relates only to the provision of health care services, then the health care affidavit is mandatory." *Id.* at 171. After applying this test, we concluded that the plaintiff's "true claim" required the filing of a health care affidavit because

---

**6.** Plaintiff argues in support of his first point that Defendant was not a "health care provider" in this case because "the relationship between a health care provider and a recipient is a consensual relationship[,]" that the consent necessary is an informed one, and Plaintiff did not consent to the insertion of the needle into his buttock. We cannot reconcile this argument with Plaintiff's admission at oral argument that the fiduciary duty he alleges Defendant breached arose out of the doctor-patient relationship. Plaintiff has also failed to provide any support for the notion that the consent necessary to create a doctor-patient relationship is dependent on consent to undergo specific procedures within a course of treatment. The cases cited by Plaintiff do not help him. In *Corbet v. McKinney,* 980 S.W.2d 166 (Mo.App. E.D.1998), it was held that no physician-patient relationship with defendant was created when the patient's personal physician merely contacted the defendant physician by telephone and discussed the patient's case. In *Spruill v. Barnes Hosp.,* 750 S.W.2d 732 (Mo.App. E.D.1988), it was held that the plaintiff's breach of contract action was actually a malpractice claim, which was effectively barred under the applicable statute of limitation. In *Barnhoff v. Aldridge,* 327 Mo. 767, 38 S.W.2d 1029 (1931), it was held that the claim the plaintiff characterized as a breach of contract action was actually a medical malpractice action barred by the applicable statute of limitation.

her claim (characterized as false imprisonment) was based on "the incorrect—or totally absent—medical determination that she needed to be confined." *Id.* at 171.

The Western District, in *Vitale v. Sandow,* held that a health care affidavit was required in a suit for libel brought against physicians who published letters stating that the plaintiff's "physical symptoms were due to malingering." 912 S.W.2d 121, 122 (Mo.App. W.D.1995). The court held that the statements were of a medical diagnosis and "constituted [the doctors'] evaluation of [the plaintiff's] condition, which is the precise reason he was referred to these doctors." *Id.* at 122. Further, the court determined that the central issue at trial would be whether the plaintiff was, in fact, malingering. *Id.* For this reason, "the basis of [the plaintiff's] true claim for damages is that the doctors' diagnosis was incorrect," and a medical affidavit was therefore required. *Id.*

In the case at bar, Plaintiff's petition avers that Plaintiff "went to [Defendant's] medical practice *to obtain medical treatment* for various skin conditions including warts." The petition then claims that Defendant "owed a *fiduciary duty* to [Plaintiff] to properly inform [Plaintiff] of the medical benefits of the *treatment* to be performed to properly obtain his informed consent to participate in such *treatment.*" The petition further claims that Defendant "breached his fiduciary duty of obtaining consent to a worthless and painful course of *medical treatment* [ ... ]." (Emphases added).

Plaintiff's true claim is that Defendant failed to appropriately obtain informed consent and rendered improper medical services. " 'The basic philosophy in malpractice cases is that the doctor is negligent by reason of the fact that he has failed to adhere to a standard of reasonable medical care and that consequently the service rendered was substandard and negligent.' " *Wuerz v. Huffaker,* 42 S.W.3d 652, 656 (Mo.App. E.D.2001) (quoting *Aiken v. Clary,* 396 S.W.2d 668, 673 (Mo. banc 1965)). "This applies whether the alleged malpractice consists of improper care or treatment or a failure to sufficiently inform a patient to enable the patient to give informed consent to the treatment." *Wuerz,* 42 S.W.3d at 656.

Because the true nature of Plaintiff's claim was that he suffered personal injury as a result of Defendant's rendering of health care services, the trial court did not err in finding that Plaintiff was required to file a health care affidavit pursuant to section 538.225. Point I is denied.

*Point II: Sufficiency of Affidavit Irrelevant Because Not Timely Filed*

Section 538.225 requires that a health care affidavit "shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days." Section 538.225.5. "If the plaintiff or his attorney fails to file such affidavit the court *shall,* upon motion of any party, dismiss the action against such moving party without prejudice." Section 538.225.6 (emphasis added). "When a statute mandates that something be done by providing that it 'shall' occur and also provides what results 'shall' follow a failure to comply with the statute, it is clear that it is mandatory and must be obeyed." *SSM Health Care St. Louis v. Schneider,* 229 S.W.3d 279, 281 (Mo.App. E.D.2007). The trial court is required to dismiss the case if the plaintiff does not file the affidavit within the statutory time period. *Gaynor v. Washington Univ.,* 261 S.W.3d at 652–53 (Mo.App. E.D.2008).

Plaintiff filed his Petition on April 20, 2007, and filed his first health care affidavit on July 11, 2008—over a year after his petition was filed. This delay was well beyond the absolute 180–day limit imposed by section 538.225. Because section 538.225 required the trial court to dismiss Plaintiff's petition (upon Defendant's motion) after the maximum time allowed for the filing of the health care affidavit had passed, the court committed no error in doing so. Whether Plaintiff's tardy affidavit otherwise complied with the requirements of section 538.225 is moot.

Plaintiff's second point is also denied, and the trial court's judgment of dismissal is affirmed.

BARNEY, J., and BATES, P.J., concur.