Sara SPEARS as Next Friend for
Joseph Reuben CLENDENING,
IV, Plaintiff–Appellant,

v.

FREEMAN HEALTH SYSTEMS and
its Employees, Agents and Representative, Sherri Severson, ED.S, LPC,
and Kelly Williams, MA, LPC, and
Jennifer Forsythe, BA, and Ozark
Center d/b/a Turnaround Ranch, Defendants–Respondents.

No. SD 31389.

Missouri Court of Appeals,
Southern District,
Division Two.

July 17, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Eryn M. Peddicord of Kansas City, MO, for Appellant.

Kent O. Hyde of Springfield, MO, for Respondent Freeman Health Systems.

Robert A. Wulff of Springfield, MO, for all other Respondents.

JEFFREY W. BATES, J.

Sara Spears (Mother) appeals from the order of the trial court dismissing without prejudice her cause of action against Freeman Health Systems, Ozark Center, Sherri Severson, Kelly Williams and Jennifer Forsythe (hereinafter referred to collectively as Defendants) for failing to file a health care affidavit pursuant to § 538.225.1.[1] Mother argues that a health care affidavit was not required because her petition alleged a cause of action based upon ordinary negligence, rather than medical negligence. Finding no merit in that argument, we affirm.

In April 2010, Mother filed a petition for damages on behalf of her 11–year–old son (Son). As thereafter amended, the petition contained the following allegations. Freeman Health Systems was a non-profit corporation that owned a facility called Ozark Center. Ozark Center was operated under the name Turnaround Ranch (the Ranch). The Ranch employed Sherri Severson (Severson) and Kelly Clarkson Williams (Williams) as licensed professional counselors. The Ranch also employed Jennifer Forsythe (Forsythe) as a "targeted case manager[.]" Son was admitted to the Ranch on September 18, 2009. While at the Ranch, Severson and Williams served as his counselors. Forsythe served as Son's targeted case manager. Three times during October 2009, Son was sexually assaulted by a 16–year–old patient (Patient) at the Ranch. After each assault, Son notified Severson or other employees of the Ranch. Neither the counselors nor the Ranch reported these assaults to the local sheriff's department. The petition for damages contained seven counts. The first count alleged that Son's injuries had been caused by the negligent failure of his counselors and the Ranch to appropriately supervise Patient. The next three counts alleged negligent infliction of emotional distress, intentional infliction of emotional distress and breach of fiduciary duty based on that same failure to supervise. The fifth, sixth and seventh counts alleged negligent failure to warn Mother and Son that he would be sharing accommodations with Patient during Son's stay at the Ranch.

On December 23, 2010, the trial court heard testimony from Mary Frerer (Frerer) at a hearing for Defendants' motion to quash. Frerer was the Director of Human Resources and Risk Management for Ozark Center. She testified that the Ranch "is an adolescent residential treatment facility." The residents of the Ranch are "seriously emotionally disturbed" and they come to the Ranch "for treatment for various emotional issues, behavioral issues." Any out-of-the-ordinary occurrence at the Ranch is reported, and the reports thus generated are primarily used in developing ongoing treatment plans. The residents live in separate cottages based on their diagnoses. A "Level Four Plus" cottage houses children who are both men-

1. All statutory references are to RSMo Cum. Supp. (2009). All rule references are to Missouri Court Rules (2010).

tally ill and mentally retarded. At the time of the assaults described in the petition, Son and Patient were both residents of the same "Level Four Plus" cottage.

Defendants filed motions to dismiss the amended petition because Mother did not file a health care affidavit. At the hearing on that motion, Defendants' attorneys asked the trial court to consider Frerer's testimony in determining whether the filing of a health care affidavit was required. Mother did not object to that request. After considering the allegations of the amended petition and Frerer's testimony, the trial court entered an order concluding "that a health care relationship existed between the minor plaintiff and the defendants and that the gravamen of plaintiff's claims for damages consists of claims against defendants in their capacities as health care providers." Mother was allowed 30 days to file an appropriate affidavit. When she failed to do so, the trial court dismissed the action without prejudice. Mother appealed.[2]

■■■ Our legislature has imposed a number of limitations on traditional tort causes of action against a health care provider. *See J.K.M. v. Dempsey,* 317 S.W.3d 621, 625 (Mo.App.2010). Chapter 538 was "a legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essential services." *Mahoney v. Doerhoff Surgical Services, Inc.,* 807 S.W.2d 503, 507 (Mo. banc 1991). The limitation at issue here is found in § 538.225.1, which states:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

*Id.* As used in this subsection, the phrase "health care services" is defined to mean:

> [A]ny services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized[.]

§ 538.205(5). The affidavit requirement in § 538.225.1 was intended "to cull at an early stage of litigation suits for negligence damages against health care providers that lack even color of merit, and so to protect the public and litigants from the cost of ungrounded medical malpractice claims." *Mahoney,* 807 S.W.2d at 507. In furtherance of that goal, Missouri courts elevate substance over form when determining whether an affidavit is required. The application of § 538.225 is not controlled by the manner in which the plaintiff characterizes the claim in the petition. *See Manning v. Fedotin,* 64 S.W.3d 841, 845 (Mo.App.2002).

---

**2.** A judgment of dismissal without prejudice pursuant to § 538.225 for failure to file a health care affidavit is final and appealable.

*See J.K.M.*, 317 S.W.3d at 626. Instead, "a pleading is judged by its subject and substance of its recitals and not its rubric or caption." *Devitre v. Orthopedic Center of St. Louis, LLC*, 349 S.W.3d 327, 334 (Mo. banc 2011).

■ We review *de novo* the trial court's interpretation and application of § 538.225.1. *Devitre*, 349 S.W.3d at 331. We apply a two-part test to determine whether a plaintiff is required by § 538.225.1 to file a health care affidavit. *See Devitre*, 349 S.W.3d at 331–32. First, we must determine whether the relationship between the parties is that of health care provider and recipient. *Id.*[3] The parties agree that the relationship between Son and Defendants was that of health care provider and recipient, so this part of the test is met. Second, we must determine whether the true claim relates solely to the provision of health care services. *Id.* at 332. As did the trial court, we will consider both the allegations in Mother's petition and Frerer's testimony to decide this issue.[4]

■ The question before us is whether a claim that medical professionals working at a residential treatment facility failed to adequately supervise two mentally ill and mentally retarded adolescents, so as to prevent one from committing a sexual assault upon the other, is one that relates solely to the provision of health care services. After reviewing the relevant statutory language, Missouri cases discussing the health care affidavit and cases from other jurisdictions applying similar statutes, we answer that question in the affirmative and affirm the trial court's decision to require a health care affidavit in the case at bar.

As noted above, a health care affidavit is required when the claims in the petition relate to "the rendering of or failure to render health care services[.]" § 538.225.1. The statutory definition of health care services includes "any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized ...." § 538.205(5). "[T]he plain and ordinary meaning of 'health care' is a service which maintains or restores the soundness of the human body *or mind,* or aids to free the body *or mind* from disease or ailment." *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 660 (Mo.App.1999) (emphasis added).

Here, Patient was a mentally ill and mentally retarded adolescent who was being treated by Defendants, all of whom were health care providers, at a residential treatment center. The gist of Mother's

---

3. The phrase "[h]ealth care provider" is defined to mean "any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility including those licensed under chapter 198, RSMo, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate[.]" § 538.205(4).

4. In Mother's brief, she argues that we should ignore Frerer's testimony and look solely at the allegations of the petition to decide this

appeal. We decline to do so. Rule 55.28 authorizes a trial court to receive oral testimony when deciding a motion that is based on facts not appearing of record. The Defendants' attorneys asked the trial court to consider Frerer's testimony when deciding whether a health care affidavit was required, and Mother did not object to that procedure. We will not permit Mother to take an inconsistent position on appeal. *See Johnson v. Debyle*, 312 S.W.3d 460, 463 (Mo.App.2010); *Roche v. Roche*, 289 S.W.3d 747, 753 (Mo.App.2009); *Mortenson v. Leatherwood Constr., Inc.*, 137 S.W.3d 529, 536 (Mo.App.2004).

claim is that Defendants failed to adequately supervise Patient so as to prevent him from sexually assaulting Son. In our view, the questions of whether Defendants should have known Patient posed a danger to other patients and what measures (i.e., isolation, restraints, medications, etc.) could be used to minimize any such danger involves a question of professional medical judgment. The fact that Mother's petition characterizes the claim as one of ordinary negligence, rather than medical negligence, is not determinative.

This Court applied that principle in *St. John's Regional Health Center, Inc. v. Windler*, 847 S.W.2d 168 (Mo.App.1993). There, a plaintiff who had been involuntarily hospitalized for mental illness sued the hospital for false imprisonment. *Id.* at 169. The plaintiff argued that the case was not governed by the § 538.225.1 requirement because it involved an intentional tort. *Id.* at 170. We disagreed, noting that the true claim was that the plaintiff had been improperly evaluated as needing hospitalization. *Id.* at 171. Thus, *Windler* holds that a health care affidavit will be required if the plaintiff's injuries arise from the improper diagnosis or evaluation of a person's mental condition. *Id.*; *see also Devitre*, 349 S.W.3d at 332–33 (holding that the definition of patient is not limited "to an individual who receives treatment ..."); *Vitale v. Sandow*, 912 S.W.2d 121, 122 (Mo.App.1995) (holding that a claim of damage arising from the defendant doctor's opinion that the plaintiff was malingering was subject to the affidavit requirement). Here, Mother's true claim involves Defendants' alleged failure to properly evaluate and treat Patient, who was a mentally ill and mentally

retarded adolescent undergoing treatment by Defendants. It is difficult to envision how Mother will prove her case without an expert witness. For the foregoing reasons, we hold that the true claim in Mother's petition is a personal injury action seeking damages against a health care provider "on account of the rendering of or failure to render health care services ...." § 538.225.1.[5]

We find support for this conclusion after reviewing persuasive authority from other jurisdictions that have considered whether their similar statutory provisions apply to allegations of patient-on-patient assaults that occur within the confines of in-patient psychiatric facilities.

For example, in *W.P. v. Universal Health Services Foundation*, 91 So.3d 1097 (La.Ct.App. 2012), H.P. was a minor child undergoing inpatient treatment at a mental health facility when he was sexually assaulted by another patient. *Id.* at 1098. The minor and his parents sued the facility, alleging, *inter alia*, that the defendant failed to maintain proper security, watch H.P. and keep him isolated from the other patient. *Id.* at 1100. The trial court dismissed the case without prejudice because the plaintiffs failed to first submit their claims for review by a medical panel as required under Louisiana's medical malpractice act. *Id.* at 1097. Like the language of § 538.225.1 that triggers the affidavit requirement in Missouri, the Louisiana act required prior review of actions that were "based on health care or professional services rendered, or which should have been rendered...." *Id.* at 1099 (italics in original omitted). The Louisiana appellate court held that review by the medical panel was required:

---

**5.** At oral argument, counsel cited *Spero v. Mason*, 372 S.W.3d 72 (Mo.App. W.D.2012), as an additional case for us to consider. That case, however, involved the issue of whether the plaintiff's claim was time-barred by § 516.105. Because the language used in that statute appears to be broader than the language used in § 538.225.1, we do not find *Spero* instructive.

In the present case, plaintiffs have alleged that the hospital was negligent in placing H.P. in a room with another psychiatric patient. These allegations of the petition raise the unique situation of placing a minor patient in a room with another patient with special medical needs. As such, the allegations relate to the particular medical assessment and condition of each of the patients, and are therefore related to the treatment of the patients within the meaning of the medical malpractice act. Further, the assessment of patients as the basis for making room assignments will certainly require expert evidence bearing on the nature of the patients' diagnoses and will require an examination of the hospital staff's exercise of professional judgment in making these assignments. Whether the hospital exercised appropriate care in assigning the minor H.P. to a room with another patient being treated in the psychiatric hospital is beyond the common experience of a layman. We find that a determination of a breach of the appropriate standard of care for assessment of psychiatric patients and making room assignments based on this assessment falls within the scope of the malpractice act.

*Id.* at 1101.

Similarly, in *Oak Park, Inc. v. Harrison*, 206 S.W.3d 133 (Tex.App.2006), plaintiff Harrison was a mental health patient who was injured by another mental health patient during an attempt by the latter to escape from the facility. The trial court decided that no expert report was required by Texas' medical liability act because the claim did not involve health care liability. *Id.* at 136. On appeal, that decision was reversed. The Texas appellate court reasoned that:

[A] consideration of various issues determines the level and types of treatment given to the individual patients at Desert Springs and to the patient population as a whole. Some patients may need enhanced supervision or physical restraints to prevent them from injuring others, while other patients do not require such measures. Some patients may need to be segregated from the remainder of the patient population to prevent them from harming others. Desert Springs must decide these issues on a patient-by-patient basis, taking into account the needs of the individual patients and the patient population as a whole. The level and types of health care given including professional supervision, monitoring, and protection of Harrison and the other patients are "judgments made by professionals trained and experienced in treating and caring for patients and patient populations."

*Id.* at 139 (citation omitted). Thus, an expert report was required for Harrison's claim. *Id.* at 141.

We reject Mother's argument that this case is controlled by *Newland v. Azan*, 957 S.W.2d 377 (Mo.App.1997), or *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898 (Mo.App.1996). *Newland* involved a sexual assault on a patient by her dentist during a procedure. *Newland*, 957 S.W.2d at 378. *Morrison* involved a patient who fell in her doctor's office. *Morrison*, 929 S.W.2d at 900. Because neither of those cases is factually similar to the case at bar, they are inapposite.

Mother also relies heavily on *Afamefune v. Suburban Hospital, Inc.*, 385 Md. 677, 870 A.2d 592 (2005). We find that decision unpersuasive for the following reasons. Maryland's statute applies to claims for "medical injury." *Id.* at 596. The definition of medical injury—"injury arising or resulting from the rendering or failure to render health care"—is superficially

similar to the language Missouri uses to determine the applicability of the affidavit requirement—"personal injury ... on account of the rendering of or failure to render health care services...." *Compare* Md.Code Ann., Cts. & Jud. Proc. § 3–2A–01(g) (West 2005), *with* § 538.225.1. However, the other portions of Maryland's act are dissimilar from Missouri law. For example, the Maryland statute does not define "health care." *See* Md.Code Ann., Cts. & Jud. Proc. § 3–2A–01. Without legislative guidance on the matter, the Maryland courts have construed the statute narrowly, so that the definition of medical injury includes "only those claims which the courts have traditionally viewed as professional malpractice[.]" *Afamefune*, 870 A.2d at 596. In Missouri, the statutory language has been construed more broadly. The legislature defined "health care services" to include "any" service rendered to a patient "in the ordinary course" of the provider's profession or organizational purpose and includes "transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized[.]" § 538.205(5). Moreover, Missouri courts have consistently interpreted Chapter 538 in an expansive manner. *See, e.g., J.K.M. v. Dempsey*, 317 S.W.3d 621, 625 (Mo.App.2010) (noting that the legislature's use of the phrase "any action" demonstrates its intent that the statute not be limited to negligence actions); *St. John's Regional Health Center, Inc. v. Windler*, 847 S.W.2d 168, 171–72 (Mo.App. 1993) (holding that the phrase "personal injuries" includes damage to personal rights and not merely physical injury); *Vitale v. Sandow*, 912 S.W.2d 121, 122–23 (Mo.App.1993) (relying on *Windler* to determine that "personal injuries" includes damage to reputation). Because of this difference in the interpretation of the two states' acts, we do not find *Afamefune* persuasive.

Mother also cites a number of other out-of-state cases that we have reviewed and find unpersuasive.[6] Mother's claim involves a patient-on-patient sexual assault of Son by Patient, both of whom were mentally retarded and mentally ill residents of an in-patient treatment facility. None of the footnoted cases cited by Mother involve a similar set of facts. Therefore, these cases are distinguishable and do not support Mother's argument.

In sum, the trial court correctly dismissed Mother's petition without prejudice after she failed to file a health care affidavit, as required by § 538.225.1. The judgment of the trial court is affirmed.

ROBERT S. BARNEY, J. and WILLIAM W. FRANCIS, P.J., concur.

---

6. *See Reaux v. Our Lady of Lourdes Hosp.*, 492 So.2d 233 (La.Ct.App.1986) (patient alleged to have been raped and killed by an intruder in defendant hospital); *Koltin v. Beth Israel Deaconess Medical Center*, 62 Mass.App.Ct. 920, 817 N.E.2d 809 (2004) (patient alleged that he was beaten by defendant hospital's security guards); *Lee v. Detroit Medical Center*, 285 Mich.App. 51, 775 N.W.2d 326 (2009) (plaintiff's claim was a statutory action based on defendant doctor's failure to report child abuse); *Borrillo v. Beekman Downtown Hosp.*, 146 A.D.2d 734, 537 N.Y.S.2d 219 (N.Y.App. Div.1989) (patient alleged that he was physically assaulted by another patient while walking down the defendant hospital's corridor); *St. Joseph Med. Ctr. v. Medical Prof'l Liab. Catastrophe Loss Fund*, 854 A.2d 692 (Pa. Commw.Ct.2004) (patients alleged that they were raped by defendant's EEG technician); *Alcoy v. Valley Nursing Homes, Inc.*, 272 Va. 37, 630 S.E.2d 301 (2006) (patient alleged that she was raped by an unknown assailant in defendant nursing home).